70 N.J. 196 (1976)
358 A.2d 773
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOSEPH G. SZIMA, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued December 1, 1975.
Decided May 17, 1976.
*197 Mr. Matthew P. Boylan, Director, Division of Criminal Justice, argued the cause for appellant (Ms. Lois De Julio and Mr. Daniel Louis Grossman, Deputy Attorneys General, of counsel and on the brief; Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. Harold Goldman argued the cause for respondent (Messrs. Goldman, Carlet, Garrison & Bertoni, attorneys).
The opinion of the Court was delivered by SULLIVAN, J.
*198 Defendant was convicted of bookmaking, working for a lottery and maintaining a gambling resort, violations of N.J.S.A. 2A:121-3, 3(a) and 3(c) respectively. The aggregate sentence imposed was not less than one year nor more than 15 months to be served in State Prison.
The Appellate Division, in an opinion reported at 133 N.J. Super. 469 (1975), reversed the judgment of conviction and ordered that the indictment be dismissed on the ground that defendant had been denied his right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution. This Court granted certification on the State's petition. 68 N.J. 170 (1975). Our conclusion is that defendant was not denied his constitutional right to a speedy trial. We therefore reverse the ruling of the Appellate Division and reinstate the judgment of conviction.
Defendant operated a bookmaking and numbers business out of his home in Garfield. The State Police, after obtaining court authorization, placed a tap on defendant's telephone and recorded on tape numerous instances of defendant's bookmaking and numbers activities extending over a period of some 13 days. Based on the foregoing, a warrant was obtained and a search of defendant's home was conducted by the State Police on February 4, 1972. Defendant, who was present in his home at the time, was arrested and charged with violations of the gambling laws. He was arraigned in Municipal Court on February 11, 1972 and released on bail.
Some 22 months later (December 5, 1973) defendant was indicted by the State Grand Jury on the charges for which he was ultimately convicted.[1] In April 1974, defendant's motion to dismiss the indictment on the ground *199 that he had been denied his Sixth Amendment right to a speedy trial was denied by the trial court. An application to the Appellate Division for leave to appeal this interlocutory ruling was denied on May 30, 1974.
When defendant was brought to trial in June 1974, defense counsel discussed with the trial judge the possibility of defendant's pleading guilty to the charges and at the same time preserving his right of appeal on the Sixth Amendment issue. The conclusion was that no such procedure was available.
Accordingly, defendant stood trial for the sole purpose of preserving his right to appeal the ruling on the Sixth Amendment issue. To that end defendant waived his right to a jury trial and stipulated to the admissibility of the State's wiretap evidence, that it was his voice recorded on the tape and that the State's witnesses were qualified experts in the fields of wiretaps, monitoring and gambling activities. The State on its part took the position that at sentencing defendant should be treated as if he had entered a guilty plea. As heretofore noted, defendant was found guilty.
The Appellate Division, in considering defendant's claim that he had been denied his Sixth Amendment right to a speedy trial, purported to apply the balancing test enunciated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). It found that the 22-month delay between the charge and indictment without any explanation or reason being offered for the delay was grossly inordinate and concluded that, under the Barker v. Wingo test, defendant had been denied his constitutional right to a speedy trial even though he had not demonstrated any specific prejudice to his defense. State v. Szima, 133 N.J. Super. 469, 473.
Preliminarily it should be noted that while most of the cases dealing with the right to a speedy trial are concerned with delay between indictment and trial, it is clear that the protection of the Sixth Amendment attaches upon *200 arrest on a criminal charge and need not await indictment or information. Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975).
Prior to 1967 a defendant's right to a speedy trial in our State system was governed by Article I, paragraph 10 of the New Jersey Constitution. This provision was construed to be a right to move for such a trial. State v. Masselli, 43 N.J. 1 (1964); State v. O'Leary, 25 N.J. 104 (1957); State v. Smith, 10 N.J. 84 (1952). However, in 1967 the United States Supreme Court in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), held that the right to a speedy trial secured by the Sixth Amendment of the United States Constitution was "fundamental" and was imposed on the states by the Due Process Clause of the Fourteenth Amendment. What was lacking, however, was any definitive pronouncement of the standards by which this right to a speedy trial was to be judged. See concurring opinion of Brennan, J., in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970).
In 1972 the Supreme Court in Barker v. Wingo, supra, undertook to set out the dimensions of this right. First, rejecting the suggestion that a fixed time period be set, it held that the right to a speedy trial is relative and depends upon circumstances. The Court recognized that some legislatures had enacted laws and some courts had adopted rules of procedure fixing a specified time within which a defendant must be brought to trial, but it held that there was no constitutional basis for requiring that the speedy trial right be so quantified.
It also rejected the concept that the right to a speedy trial was waived if not demanded. However, it held that a defendant had some responsibility to assert a speedy trial claim and emphasized that failure to assert the right would make it difficult for a defendant to prove that he was denied a speedy trial. The proper approach suggested by the Supreme *201 Court was an ad hoc balancing test in which the conduct of both the prosecution and the defendant are weighed.
Four factors which courts should assess in determining whether a particular defendant has been deprived of the right of speedy trial were identified. They are length of delay, the reason for the delay, the defendant's assertion of the right and prejudice to the defendant. The factor of prejudice was said to include oppressive pretrial incarceration, anxiety and concern of the accused and impairment of the defense. Of these, impairment of the defense was considered the most serious since it went to the question of fundamental fairness.
The Court regarded none of the four factors as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, they were to be treated as related factors to be considered with such other circumstances as may be relevant.
The Appellate Division recognized the Barker test as controlling but, in applying it, rested its determination on the length of the delay and the absence of any explanation for such delay. The Appellate Division noted that defendant could have moved to dismiss the complaint under R. 3:25-3 for unnecessary delay in presenting the charge to the grand jury but held that "such failure" did not constitute a waiver of defendant's Sixth Amendment right to a speedy trial.
An additional factor which the Appellate Division indicated was relevant was the societal interest in bringing swift prosecutions and the obligations of the State to protect that interest.
We recognize that application of a balancing of interests test must be on an ad hoc basis and necessarily involves subjective reaction to the balancing of circumstances. Our difficulty with the Appellate Division ruling is that it viewed primarily the conduct of the prosecution and failed to weigh in the balance, as Barker requires, defendant's conduct also, and the impact of the delay on him.
*202 Here defendant was not subjected to lengthy pretrial incarceration. He made no effort to assert his right to a speedy trial by moving to dismiss the pending complaint under R. 3:25-3. He claims no impairment of his ability to defend. Balancing these factors with the 22-month delay and the State's failure to explain such delay we conclude that defendant was not denied his Sixth Amendment right to a speedy trial. See People v. Taranovich, 37 N.Y.2d 442, 373 N.Y.S.2d 79, 335 N.E. 2d 303 (1975) (one year interval between arraignment and indictment). However, our holding should not be understood to put a stamp of approval on the delay here involved. It should not have happened.
It may well be that as a matter of policy the State should ordinarily be required to bring an accused to trial within a specified period of time. See Rule 722, Uniform Rules of Criminal Procedure of the National Conference of Commissioners on Uniform State Laws (App. Draft 1974); National Advisory Commission on Criminal Justice Standards and Goals, Task Force on Courts, Section 4.1 (1973); American Bar Association, Standards Relating to Speedy Trial, Section 2.1 (App. Draft 1968). This would not only protect the public interest in speedy justice, but also assure an accused a speedy trial. We are presently considering the adoption of an appropriate court rule.
Defendant also argues that the sentence imposed on him was manifestly excessive under the circumstances. He had no prior criminal record of any kind and enjoyed a stable home environment and good standing in his community. Based on the foregoing it is contended that the sentence imposed should have been noncustodial.
The sentencing judge took these factors into consideration. However, the record indicated that defendant was a "sitter" in a significant gambling operation and there were "higher ups" involved. Although defendant, for all practical purposes, admitted his guilt, he refused to cooperate with the State. See State v. Ivan, 33 N.J. 197 *203 (1960); State v. De Stasio, 49 N.J. 247 (1967). A sentencing judge is given broad discretion in fixing the quantum of sentence, so long as it is within statutory bounds. Before a reviewing court may revise a sentence there must be a clear showing of abuse of discretion. State v. Tyson, 43 N.J. 411, 417 (1964), cert. denied 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965). We are not persuaded that the sentence imposed on defendant was manifestly excessive.
The judgment of the Appellate Division is reversed and the judgment of conviction is hereby reinstated.
PASHMAN, J. (dissenting).
This case considers whether an unexplained lapse of 22 months between the time of arrest and a subsequent indictment constitutes a denial of the fundamental right to a speedy trial. All parties agree that disposition of the matter depends on the proper application of the balancing test established by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[1] This test assesses the conduct of both the prosecution and the defendant, and specifically considers factors such as the length of *204 delay, the reason for the delay, the defendant's assertion of his right and the prejudice suffered by the defendant. Barker v. Wingo, supra, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed. 2d at 116-117. In applying the test to this case, the Appellate Division held that defendant was denied his right to a speedy trial and was therefore entitled to dismissal of his indictment for bookmaking, working a lottery and maintaining a gambling resort. State v. Szima, 133 N.J. Super. 469 (App. Div. 1975). The majority today admits that the Appellate Division utilized the correct test, but reverses on that court's improper application of the test. I find the majority's criticism of the Appellate Division to be wholly unfounded and, accordingly, I dissent and would affirm.
First, the majority differentiates its position from that of the Appellate Division on the basis of factors which should have, but supposedly did not, enter the weighing process in which the Appellate Division engaged in its application of the Barker test:
We recognize that application of a balancing of interests test must be on an ad hoc basis and necessarily involves subjective reaction to the balancing of circumstances. Our difficulty with the Appellate Division ruling is that it viewed primarily the conduct of the prosecution and failed to weigh in the balance, as Barker requires, defendant's conduct also, and the impact of the delay on him. [Ante at 201]
This objection, however, misinterprets the decision of the Appellate Division. Contrary to what the majority contends, that court not only reviewed defendant's conduct, but confronted this task in a very direct fashion:
Defendant did not move for dismissal of the complaint, as he might have done under R. 3:25-3, but we recognize that as a practical matter defendant could hardly ask to be indicted. However, after the return and service upon him of this indictment, he promptly moved for its dismissal. [133 N.J. Super. at 473]
This factor was weighed against other pertinent considerations after which the court concluded that "the balance is *205 weighted decisively against the State." 133 N.J. Super. at 472. I agree.
Support for this conclusion may be found in comparisons between the instant case and Barker v. Wingo. There, the United States Supreme Court rejected defendant's claim that his sixth amendment rights had been denied, but recognized that a "close" case was presented. Id. 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 119. The Court, while conceding that the length of delay (5 years) was both extraordinary and to some degree unjustified, identified as the "most important" countervailing factor, "the fact that Barker did not want a speedy trial." This conclusion was based on evidence that Barker had not objected to the prosecution's numerous motions for adjournment. Id. 407 U.S. at 534-535, 92 S.Ct. at 2194, 33 L.Ed.2d at 119. By contrast, in the instant case, defendant asserted his rights soon after the legal proceedings were initiated. Though defendant did not object to the delay which preceded his indictment, this situation is clearly distinguishable from a failure to object to prosecutorial requests for a continuance after an indictment has been returned and a trial has been scheduled (as in Barker v. Wingo). See 407 U.S. at 536, 92 S.Ct. at 2194, 33 L.Ed. 2d at 120. The burden of seeking an indictment has never been and should never be placed on defendant. Id. 407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116.
Second, after criticizing the Appellate Division for striking an improper balance of the pertinent speedy trial factors, my Brethren place undue weight on the alleged absence of specific prejudice to the defendant. In particular, they note that Szima was not subjected to the inconveniences which are usually associated with delayed trials such as lengthy pretrial proceedings and pretrial incarceration. Similarly, they note that the defendant did not suffer any substantial impairment of his defense. Nevertheless, as enunciated by the Supreme Court in Barker v. Wingo, supra, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, *206 and as restated by the majority here (ante at 201), none of the four factors which were specifically identified is indispensable to finding a denial of the right to a speedy trial. Furthermore, failure to establish actual prejudice does not preclude vindication of this constitutional right. Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183, 185 (1973); Dillingham v. United States, supra, 423 U.S. at 64, 96 S.Ct. at 303, 46 L.Ed.2d at 207; see Note, supra, 20 Stan. L. Rev. at 497-501. In any event, I find that defendant did incur prejudice in the instant case.
It is well settled that even where a defendant is not subjected to lengthy pretrial incarceration, he may nonetheless be severely prejudiced by an unreasonable delay in his prosecution. For example, prejudice may be manifested in terms of faded memories, lost evidence, or increased anxiety which the criminal defendant experiences as he awaits disposition of his case. United States v. Mann, 291 F. Supp. 268, 271 (S.D.N.Y. 1968); cf. Smith v. Hooey, 393 U.S. 374, 380, 89 S.Ct. 575, 21 L.Ed.2d 607, 612 (1969); Petition of Provoo, 17 F.R.D. 183, 203 (D. Md. 1955), aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). Frankel v. Woodrough, 7 F.2d 796, 798-99 (8 Cir.1925); Hanrahan v. United States, 121 U.S. App. D.C. 134, 348 F.2d 363, 367 (1965). In addition, the defendant automatically endures "restraints on his liberty" and lives "under a cloud of anxiety, suspicion, and often hostility." Barker v. Wingo, supra, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. See also United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630 (1966); Smith v. Hooey, supra, 393 U.S. at 377-380, 89 S.Ct. at 576-78, 21 L.Ed.2d at 611-612; Klopfer v. North Carolina, 386 U.S. 213, 221-22, 87 S.Ct. 988, 992-93, 18 L.Ed.2d 1, 6-7 (1967); Hanrahan v. United States, supra, 348 F.2d at 366-367. Finally, as the Supreme Court most recently explained in Dillingham v. United States, supra:
*207 Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. [423 U.S. at 65, 96 S.Ct. at 303, 46 L.Ed.2d at 207]
While this form of prejudice may be de minimis in some cases, clearly in this case such prejudice is quite significant. Here, the defendant is an elderly individual with a large family which consists of his own children and the children of his sister whom he helped raise. At the time of his arrest, he had no prior record of criminal activity and was an exemplary citizen who was well respected in his community. He also was working steadily at two separate jobs. Under these circumstances, his vulnerability to the prejudice mentioned above is apparent.
Finally, as the Supreme Court recognized in Barker v. Wingo, supra, 407 U.S. at 519, 92 S.Ct. at 2186, 33 L.Ed.2d at 110-111, "There is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." In reaching its decision, the majority today overlooks this important societal interest.
The right to a speedy trial, which finds its origins in the Magna Carta, has been transposed to the United States Constitution by means of the sixth amendment.[2] This right has been clearly recognized as "fundamental" and hence applicable to the states through the Due Process Clause of the fourteenth amendment.[3]Klopfer v. North Carolina, *208 supra, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1; see also Dickey v. Florida, 398 U.S. 30, 37-38, 90 S.Ct. 1564, 26 L.Ed.2d 26, 31-32 (1970); Smith v. Hooey, supra, 393 U.S. at 375, 383, 89 S.Ct. at 579, 21 L.Ed.2d at 609, 614. With respect to the public interest in this guarantee, the Supreme Court in Barker v. Wingo, supra, 407 U.S. at 519-21, 92 S.Ct. at 2186-87, 33 L.Ed.2d at 111 stated:
The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. It must be of little comfort to the residents of Christian County, Kentucky, to know that Barker was at large on bail for over four years while accused *209 of a vicious and brutal murder of which he was ultimately convicted. Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation. [Footnotes omitted]
To this one might add that it is the correlation between the speed and certainty of punishment, rather than its degree or harshness, that provides the most effective deterrent to crime. Nat'l Advisory Comm. on Criminal Justice Standards and Goals, A National Strategy to Reduce Crime, 94 (1973); President's Comm'n on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 154-56 (1967); Nat'l Comm'n on the Causes and Prevention of Violence, Task Force on Law and Law Enforcement, Law and Disorder Reconsidered, 509-524 (1968).
The paramount importance of effectuating the right to a speedy trial received recent and explicit statutory recognition by the passage of the federal "Speedy Trial Act of 1974," 18 U.S.C.A. § 3161 et seq. This legislation requires that "any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested." 18 U.S.C.A. 3161(b) [emphasis supplied].[4] Compare this requirement with the 22-month period in the instant case. The importance of bringing defendants to trial expeditiously was also recognized in the Governor's most recent "State of the State" address, where he proposed that all defendants indicted for violent crimes be brought to trial within 90 *210 days. Annual Message of Governor Brendan Byrne, 17 (Jan. 13, 1976).
Certainly, where good reasons exist for a delay, courts may be justified in finding no denial of the right to a speedy trial. However, the instant case presents an exemplary situation for affirmative enforcement of the aforementioned societal interests. See Barker v. Wingo, supra, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. This case involved an uncomplicated "street crime" which presumably could have been prosecuted without much difficulty. The State's case relied almost exclusively on defendant's telephone conversations which were recorded during a 13-day period. There was no indication that any additional investigation was either undertaken or required for presentation of the prosecution's case. Since these tape recordings were in the possession of the prosecution at the time of defendant's arrest, there is no discernible reason why the prosecution failed to proceed expeditiously.[5] As the Supreme Court observed in Barker v. Wingo, supra, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.
*211 Expeditious prosecution should be encouraged to vindicate society's interests and to protect the rights of the individual defendant. This is an appropriate case for advancing this dual purpose of the sixth amendment.
I would affirm the Appellate Division, vacate the conviction and dismiss the indictment.
CONFORD, P.J.A.D., Temporarily Assigned (dissenting).
I agree with the majority that Barker calls for "application of a balancing of interests test * * * on an ad hoc basis and necessarily involves subjective reaction" to the balanced consideration of the four pertinent factors  length of time, excuse for delay, demand by defendant and prejudice. (201-202). However my own balancing of the stated factors as applied to the instant circumstances leads to concurrence with the Appellate Division conclusion for dismissal of the indictment on speedy trial grounds, and for essentially the same reasons as set forth in its per curiam opinion. 133 N.J. Super. 469 (App. Div. 1975).
I cannot agree with the majority's assessment of the Appellate Division opinion as failing "to weigh in the balance * * * defendant's conduct also, and the impact of the delay on him." (p. 201). The court adverted to the fact that defendant did move to dismiss the indictment on speedy trial grounds and that, as to the situation prior to indictment, "as a practical matter defendant could hardly ask to be indicted." 133 N.J. Super. at 473. I agree with that observation. Moreover, at what time period or periods prior to indictment could defendant reasonably be required to have made motions to dismiss the charge under R. 3:25-3? Every three months; six months, etc.? See Barker v. Wingo, supra, 407 U.S. at 527-528, 92 S.Ct. 2182, 33 L.Ed. 2d 101. I believe it should be assumed that a charged but unindicted defendant wants the charge disposed of, one way or the other, with reasonable dispatch, without being required to prove that desire by periodic motions to dismiss *212 at peril of loss of his constitutional right to an expeditious prosecution.
As to prejudice, as the Appellate Division observed, "Barker makes it clear that delay is inherently capable of leading to prejudice, both to defendant and society." 133 N.J. Super. at 473. That is a correct reading of Barker. While defendant was not prejudiced in the actual defense against the charge (as he conceded guilt) he did sustain the anxiety, community hostility, and unsettlement of his affairs which every person under criminal charges is presumed to bear, see Barker v. Wingo, 407 U.S. at 532, 533, 534, 92 S.Ct. 2182, 33 L.Ed.2d 101. Moreover, it is now clear that "actual prejudice" is not necessarily a prerequisite to relief on "speedy trial" grounds. Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205, 207 (1975).
Finally, I do not believe the majority sufficiently weighs the community interest in discouraging the kind of totally unjustified delay for which the State was here responsible over a period of 28 months between arraignment and trial. Dismissal of this gambling prosecution on speedy trial grounds would, I think, be a relatively small price to pay for alerting the prosecutorial machinery of the State to the social urgency of expeditious prosecutions of crime. See p. 202; Barker v. Wingo, supra, 407 U.S. at 519-520, 92 S.Ct. 2182, 33 L.Ed.2d 101.
I would affirm the judgment of the Appellate Division.
For reversal  Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge KOLOVSKY  5.
For affirmance  Justice PASHMAN and Judge CONFORD  2.
NOTES
[1] Defendant was also indicted on a charge of possession of lottery paraphernalia, a violation of N.J.S.A. 2A:121-3(b). However, the trial court found that the State's proofs were insufficient to sustain this charge and dismissed it on defendant's motion.
[1] While there was once authority for the proposition that pre-indictment delays do not implicate a defendant's right to a speedy trial as do delays in bringing a case to trial after indictment, see e.g., United States v. Palmer, 502 F.2d 1233 (5 Cir.1974), rev'd sub nom. Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205, 207 (1975); United States v. Zane, 489 F.2d 269, 270 (5 Cir.1973), cert. den. 416 U.S. 959, 94 S.Ct. 1975, 40 L.Ed.2d 310 (1974); United States v. Smith, 487 F.2d 175, 177 (5 Cir.1973), cert. den. 419 U.S. 846, 95 S.Ct. 82, 42 L.Ed.2d 75 (1974), it is now well settled that the right to a speedy trial attaches upon arrest and "need not await indictment, information or other formal charge." Dillingham v. United States, supra, 423 U.S. at 65, 96 S.Ct. at 304, 46 L.Ed.2d at 207; United States v. Marion, 404 U.S. 307, 321, 92 S.Ct. 455, 30 L.Ed.2d 468, 479 (1971); cf. Barker v. Wingo, supra, 407 U.S. at 519-20, 92 S.Ct. at 1286-87, 33 L.Ed.2d at 110-111, Note, "The Right to a Speedy Trial," 20 Stan. L. Rev. 476 (1968).
[2] The sixth amendment in relevant part provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, ... [U.S. Const., Amend. VI; emphasis supplied]
[3] The United States Supreme Court, in Klopfer v. North Carolina, supra, discussed the historical background of this right:

We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment. That right has its roots at the very foundation of our English law heritage. Its first articulation in modern jurisprudence appears to have been made in Magna Carta (1215), wherein it was written, "We will sell to no man, we will not deny or defer to any man either justice or right"; but evidence of recognition of the right to speedy justice in even earlier times is found in the Assize of Clarendon (1166). By the late thirteenth century, justices, armed with commissions of gaol delivery and/or oyer and terminer were visiting the countryside three times a year. These justices, Sir Edward Coke wrote in Part II of his Institutes, "have not suffered the prisoner to be long detained, but at their next coming have given the prisoner full and speedy justice, ... without detaining him long in prison." To Coke, prolonged detention without trial would have been contrary to the law and custom of England; but he also believed that the delay in trial, by itself, would be an improper denial of justice. In his explication of Chapter 29 of the Magna Carta, he wrote that the words "We will sell to no man, we will not deny or defer to any man either justice or right" had the following effect:
"And therefore, every subject of this realme, for injury done to him in bonis, terris, vel persona, by any other subject, be he ecclesiasticall, or temporall free, or bond, man, or woman, old, or young, or be he outlawed, excommunicated, or any other without exception, may take his remedy by the course of the law, and have justice, and right for the injury done to him, freely without sale, fully without any denial and speedily without delay." [386 U.S. at 223-24; 87 S.Ct. at 993-94, 18 L.Ed.2d at 8-9; footnotes omitted]
[4] The Speedy Trial Act of 1974 includes gradual implementation of this requirement, providing that indictments shall be returned within 60 days in the first 12-calendar-month period after the effective date of the Act, within 45 days in the second 12-calendar-month period and within 35 days in the third 12-calendar-month period. 18 U.S.C.A. § 3161(f). The Act also establishes time limits for other aspects of the criminal process and imposes sanctions  such as dismissal of the indictment  for failure to comply with these limitations. 18 U.S.C.A. § 3161 et seq.
[5] It is in this respect that the instant case is distinguishable from People v. Taranovich, 37 N.Y.2d 442, 373, N.Y.S.2d 79, 335 N.E.2d 303 (Ct. App. 1975), cited by the majority. In that case, finding that a speedy trial had not been denied, the court wrote:

The third factor, the nature of the underlying charge, would appear to be in the People's favor. Appellant was arrested for attempted murder, a class B felony, and indicted for assault in the first degree, a class C felony. Upon such a serious charge, the District Attorney may be expected to proceed with far more caution and deliberation than he would expend on a relatively minor offense. [373 N.Y.S. 2d at 82, 335 N.E.2d at 306]
The case is also distinguishable on the grounds that the delay (a one-year lapse between arraignment and indictment) was not as lengthy as in the instant case and the existence of prejudice was not as apparent.