**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5329-16T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ANDREW HYSLOP,

      Defendant-Appellant.

_____

> Argued May 20, 2019 – Decided July 10, 2019
>
> Before Judges Messano, Fasciale and Gooden Brown.
>
> On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Municipal Appeal No. 5-16.
>
> Matthew Whalen Reisig argued the cause for appellant (Reisig Criminal Defense & DWI Law, LLC, attorneys; Matthew Whalen Reisig, on the brief).
>
> Lauren E. Bland, Assistant Prosecutor, argued the cause for respondent (Michael H. Robertson, Somerset County Prosecutor, attorney; Lauren E. Bland, of counsel and on the brief).

PER CURIAM

Defendant Andrew Hyslop appeals from his de novo conviction in the Law Division, after entering a conditional guilty plea to driving while under the influence (DWI), N.J.S.A. 39:4-50. As a result, defendant's driving privileges were suspended for seven months, and he was ordered to install an ignition interlock device for thirteen months, attend the Intoxicated Drivers Resource Center for twelve hours, and pay mandatory fines, fees, and penalties.

Defendant preserved his right to appeal the denial of his motion to dismiss based on a violation of his constitutional right to a speedy trial. His speedy trial motion was first denied by the municipal court judge, and subsequently by the Law Division judge in an order entered on June 30, 2017. On appeal, defendant raises the following single point for our consideration:

> THE LAW DIVISION'S DENIAL OF DEFENDANT'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS DURING [THE] TRIAL DE NOVO WAS INCORRECT AS A MATTER OF LAW.

Based on our review of the record and the applicable legal principles, we disagree and affirm.

We focus on the procedural history as set forth in the record. On November 15, 2013, defendant was issued three summonses in Franklin Township for violations of N.J.S.A. 39:4-88, failure to maintain lane; N.J.S.A. 39:4-97, careless driving; and N.J.S.A. 39:4-50, DWI. Defendant was granted

a waiver of the initial appearance scheduled for November 19, 2013. Defendant's first appearance in Franklin Township Municipal Court occurred on April 16, 2014,[1] at which time the matter was adjourned due to open discovery on both sides. Specifically, the State had not provided the Standard Statement for Motor Vehicle Operators (standard statement), and defendant was awaiting an expert report, which he subsequently served on the State on May 2, 2014.

On May 6, 2014, defendant appeared before Franklin Township Municipal Court Judge Hector I. Rodriguez, who recused himself on defendant's oral application because, prior to his appointment to the bench, Judge Rodriguez had served as the Franklin Township Municipal Prosecutor while defendant's charges were pending. Defendant next appeared on May 22, 2014, but the matter was again adjourned because the State still had not provided the standard statement. The next scheduled court appearance was September 12, 2014. However, that date was adjourned because the Court Administrator had mistakenly scheduled the case before Judge Rodriguez.

Defendant was next scheduled to appear before Franklin Township Municipal Court Judge Michael Fedun on November 20, 2014. However, prior

---

[1] It is unclear in the record why earlier court dates were re-scheduled. However, it does not appear that defendant caused the re-scheduling.

to his appointment to the bench, Judge Fedun had also served as the Franklin Township Municipal Prosecutor while defendant's charges were pending. As a result, Judge Fedun recused himself based on defendant's November 17, 2014 written request, and the case was again adjourned. By letter dated November 18, 2014, defendant first invoked his right to a speedy trial.

Because both Franklin Township municipal judges had conflicts, the case was transferred to South Bound Brook Municipal Court by letter dated February 25, 2015, with a trial date of April 1, 2015. Defendant sought and was granted an adjournment of the April 1, 2015 trial date due to a medical condition of defense counsel's associate. The matter was then rescheduled for April 15, 2015, which date was again adjourned because the South Bound Brook Court Administrator failed to notify the Franklin Township police officers involved in the case. When defendant appeared for trial on May 20, 2015, he filed a motion to dismiss on speedy trial grounds, resulting in the adjournment of the trial pending adjudication of the motion. The motion was denied on August 5, 2015, and defendant entered a conditional guilty plea to DWI in the South Bound Brook municipal court on August 19, 2015.

On September 8, 2015, defendant filed a municipal appeal with the Law Division. On December 2, 2016, the Law Division judge entered an order for

A-5329-16T2

the Franklin Township Court Administrator to produce a "[c]onflicts protocol/procedures for cases wherein either [Judge Rodriguez or Judge Fedun] were 'conflicted out' from hearing cases . . . filed/handled during their tenure as Municipal Prosecutor for Franklin Township[;]" a list of "any other cases which were transferred due to the [judges'] conflicts[;]" and a "[c]opy of any [t]ransfer [o]rder entered" in defendant's case "pursuant to Rule 7:8-2." Following receipt of the Municipal Court Transfer and Consolidation procedures for Vicinage 13, the judge conducted a trial de novo on the record below pursuant to Rule 3:23-8(a)(2).

On March 30, 2017, during oral argument, the judge acknowledged "a level of discomfort . . . with regard to the delay occasioned in the . . . adjudication of . . . defendant's case." Nevertheless, on June 30, 2017, the judge issued a twenty-eight page written opinion ultimately denying defendant's speedy trial motion. In the opinion, initially, the judge made "independent findings of fact based on the [m]unicipal [c]ourt transcripts." See State v. Avena, 281 N.J. Super. 327, 333 (App. Div. 1995) (explaining the role of the Law Division is to make independent findings of facts and conclusions of law based on the record developed in the municipal court (citing State v. Johnson, 42 N.J. 146, 157 (1964))).

In that regard, the judge found the following facts undisputed:

> Defendant's case was 628 days old when the transferee Municipal Court (South Bound Brook) denied [d]efendant's [m]otion to [d]ismiss on [s]peedy [t]rial grounds. Defendant only made three court appearances during the pendency of his matter in the transferor Municipal Court, Franklin Township. No explanation has ever been provided as to why [d]efendant's matter was not scheduled and heard by a municipal court judge without a conflict during the approximate [fifteen] months that it was venued in the Franklin Township Municipal Court. It is uncontroverted that [d]efendant asserted his right to a speedy trial in writing on November 18, 2014. It remains a fact that [d]efendant's case was not heard anywhere in any municipal court between May 22, 2014 and May 20, 2015.

Next, the judge recounted the four factors enunciated in Barker v. Wingo, 407 U.S. 514, 530 (1972), to evaluate claims of a speedy trial violation, namely, the "[l]ength of delay;" "the reason for the delay;" the "[d]efendant's assertion of the right to trial;" and "the prejudice to the [d]efendant." The judge then recited in detail each discrete segment of the delay, and conducted a painstaking analysis informed by the Barker factors. Applying the first Barker factor, the judge pointed out that defendant's case "was 551 days old" when he filed his speedy trial motion on May 20, 2015, and "628 days old" when his motion was denied on August 5, 2015. The judge determined that although "[s]aid time frames constitute a substantial delay[,] . . . no set time period exists as a matter

6

of law, after which, a [d]efendant is deemed deprived of his right to a speedy trial." See State v. Tsetsekas, 411 N.J. Super. 1, 11 (App. Div. 2009) ("There is no set length of time that fixes the point at which [a] delay is excessive.").

Next, the judge considered the second Barker factor, stressing that "[t]he reasons behind the . . . delays [were] multi-faceted." Beginning with "the first five months," from November 19, 2013, when the initial appearance was scheduled to May 2, 2014, when defendant served his expert report, the judge attributed the reason for the delay "equally . . . to both sides." The judge continued:

> Thereafter, due to the conflicts of the two . . . newly appointed Franklin Township Municipal Court Judges, . . . both former Municipal Prosecutors in Franklin Township at the time [d]efendant's charges arose, the matter was adjourned on May 6, 2014, May 22, 2014, September 12, 2014, and November 17, 2014. By letter dated November 18, 2014, [d]efendant invoked his right to a speedy trial. This segment of delay, May 2014 through November 2014, was due to legitimate legal conflicts, not because of incomplete discovery or missing witnesses.

Specifically addressing defendant's argument regarding the second factor, the judge acknowledged that the Franklin Township Municipal Court "[c]ould" and "[s]hould" have "done a better job identifying pending cases" posing "a conflict" and requiring "transfer to a 'conflict' [c]ourt," or establishing "a

7

'conflicts calendar day'" presided over by "an outside [m]unicipal [c]ourt [j]udge." However, the judge rejected defendant's contention that "the lack of automatic and immediate recusals" of both judges, and Franklin Township Municipal Court's "failure . . . to have procedures in place to preemptively avoid such conflicts" constituted "inexcusable negligence on the [c]ourt's part." The judge determined that Franklin Township Municipal Court's "failure" was "not dispositive as a [standalone] fact/issue" and did "[n]ot in and of itself" constitute "a violation of [d]efendant's right to a speedy trial warranting dismissal of the charges[.]" Instead, "[s]aid failure must be included in the overall analysis in the weighing of the four . . . Barker factors[.]"

The judge further explained:

> Defendant . . . cites no court rule, caselaw[,] or administrative procedure establishing, or requiring, a conflicts protocol which was violated. Despite some administrative deficiencies . . . to more readily identify[] the conflicts, and more expeditiously transfer[] such cases, the foundational reason for the delay rests firmly on good cause. . . . [The] judicial conflict circumstance was further compounded by two [j]udges being so conflicted. Furthermore, their appointments were staggered into 2014, extending the time by which a conflict would be discovered as to Judge Fedun, the second and later appointment.
>
> Therefore, the reason for the delay from May 2014 through November[] 2014 is relatively neutral, or slightly weighted in [d]efendant's favor.

8

The judge continued that there was an "approximate [three-]month delay," from November 18, 2014, when "[d]efendant invoked his right to a speedy trial[,]" to February 25, 2015, when South Bound Brook Municipal Court notified defendant by letter of an April 1, 2015 trial date. According to the judge, that three-month delay "[was] attributable to administrative deficiencies in the Franklin Township Municipal Court." Thereafter, there was an additional two-month delay from "March[] 2015 through May[] 2015," when the defense "requested an adjournment of the April 1, 2015 trial date due to the illness of [an] associate," and "the South Bound Brook Court Administrator failed to notice the Franklin Township police officers" of the rescheduled April 15, 2015 trial date. The judge determined that this two-month delay "[was] neutral and/or equally attributable" to both sides.

Further, there was another two-month delay during which defendant's motion to dismiss on speedy trial grounds, filed "on the day of trial[,]" was adjudicated. The judge explained that "this approximate [two-]month delay [was] attributable to . . . [d]efendant[,]" in the same way that "such time frame would be deemed excludable time attributable to the [d]efendant" under the "Criminal Justice Reform [Act.]" See State v. Marcus, 294 N.J. Super. 267, 293 (App. Div. 1996) ("Any delay caused by the defendant, such as by filing pretrial

motions, is not considered in calculating the length of delay for speedy trial purposes") (citing State v. Gallegan, 117 N.J. 345, 355 (1989)).

The judge continued:

> Following the denial of [d]efendant's motion to dismiss on August 5, 2015, the case was scheduled for trial on August 19, 2015. On said date, [d]efendant entered a conditional guilty plea to a violation of N.J.S.A. 39:4-50 based upon a .20% BAC. The failure to maintain lane and careless driving summonses were dismissed. . . .
>
> Therefore, there is no delay attributable to either the State or [d]efendant following the [c]ourt's decision on the motion to dismiss and the trial/conditional guilty plea two weeks later, through the appeal de novo.

The judge acknowledged that under Barker, "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily[,] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the [d]efendant." 407 U.S. at 531. The judge concluded:

> Here[], the delays, while somewhat significant[,] are not attributable to any lack of preparedness or bad[] faith on the part of the State. Instead, the lengthiest portion of the delays were caused by the conflicts arising from the newly appointed Franklin Township Municipal Judges. This [c]ourt does not find these adjournments to be highly negligent or inexcusable. . . . The unanticipated and unavoidable conflicts created by abnormal circumstances, that is,

the appointment of two Franklin Township Municipal Prosecutors to the bench in the same municipality and year, weigh against . . . [d]efendant's assertions. To put it simply, these were "valid reasons" that justify the somewhat lengthy delay.

Turning to the third Barker factor, the judge noted it was "undisputed that . . . [d]efendant sent a letter notice dated November 18, 2014[,] to Franklin Township Municipal Court asserting his [s]peedy [t]rial rights, followed by a formal . . . [m]otion to [d]ismiss on May 20, 2015, in South Bound Brook Municipal Court." Therefore, the judge determined the third "factor weigh[ed] in favor of . . . [d]efendant." Finally, regarding the fourth Barker factor, the judge stated that to show prejudice, defendant "merely allude[d] to anxiety from a pending case[,]" "claim[ed] 'irreparable' prejudice due to a DWI matter 'weighing on him[,]'" and "assert[ed] he was 'extraordinarily prejudiced'" and suffered "incalculable emotional strain" from the delay. The judge noted defendant could not "claim prejudice from oppressive pretrial incarceration[,]" and "made no claim" of "prejudice . . . from 'the possibility that the defense [would] be impaired,'" which the Barker Court "found to be the most serious prejudice factor." See 407 U.S. at 532.

To address defendant's prejudice claims, the judge distinguished State v. Cahill, 213 N.J. 253 (2013), and rejected defendant's reliance on "Cahill for the

proposition that a speedy trial violation [could] be established without evidence of prejudice." According to the judge, in Cahill, where the defendant "similarly had a pending DWI charge that was left unresolved for [sixteen] months[,]" in addition to the anxiety associated with the pending unresolved charge, the defendant experienced "actual prejudice." Specifically, the judge explained that, in contemplation of his license suspension, the defendant in Cahill "limited his search for employment to short-term jobs that would not require him to drive to work[,]" "surrendered a job offer that would [have] require[d] him to drive[,]" and "adjusted his job search to a more full-time position" based on his mistaken belief that, given the delay, the State had abandoned the prosecution. Id. at 259. The judge reasoned that, in contrast to Cahill, defendant in this case "made no similar allegations of actual prejudice beyond the anxiety of the unresolved charges."

The judge continued:

> Other than general anxiety, . . . [d]efendant asserts no other prejudice, let alone provides the [c]ourt with any evidence of same, which undercuts his argument. Finally, . . . [d]efendant cannot claim prejudice from his conviction following entry of his conditional guilty plea, as his driver's license suspension has been stayed pending appeal.

The judge concluded:

> Defendant has failed to demonstrate that factors [two] and [four] of the <u>Barker</u> test, that is, reason for the delay and prejudice to the [d]efendant, weigh in his favor. The reasons for the delay, primarily the conflicts arising from the appointment of the Municipal Judges in Franklin Township, were neither grossly negligent nor inexcusable. . . . Defendant has not demonstrated any prejudice aside from general anxiety arising from an unresolved quasi-criminal case. Any inconvenience cause[d] to . . . [d]efendant does not rise to the level of a deprivation of his [c]onstitutional right to a [s]peedy [t]rial.

The judge entered a conforming order and this appeal followed.

Our standard of review is well-settled. A trial judge's determination after "balancing all the relevant factors relating to the respective interests of the State and the defendant[]," "should not be overturned unless clearly erroneous." <u>State v. Merlino</u>, 153 N.J. Super. 12, 17 (App. Div. 1977). "However, no such deference is owed to the Law Division . . . with respect to legal determinations or conclusions reached on the basis of the facts." <u>State v. Stas</u>, 212 N.J. 37, 49 (2012). Because the ultimate question of whether defendant's constitutional right to a speedy trial was violated is a legal issue, it is subject to de novo review. <u>See</u> <u>State v. Handy</u>, 206 N.J. 39, 45 (2011) (stating "appellate review of legal determinations is plenary").

"The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states by the Due Process Clause

of the Fourteenth Amendment." Tsetsekas, 411 N.J. Super. at 8. The right applies "to quasi-criminal matters pending in the municipal courts," such as DWI cases. Cahill, 213 N.J. at 267. When evaluating whether a defendant's constitutional right to a speedy trial has been violated, the four-factor balancing test announced in Barker, 407 U.S. at 530, adopted by our Supreme Court in State v. Szima, 70 N.J. 196, 200-01 (1976), and reaffirmed in Cahill, 213 N.J. at 277, must be applied and "the conduct of both the prosecution and the defendant . . . weighed." Barker, 407 U.S. at 530. Indeed, no single factor under the four-part test is dispositive; rather, they are related and must be considered together, along with "such other circumstances as may be relevant." Szima, 70 N.J. at 201. Likewise, "the absence of one or some of the factors is not conclusive of the ultimate determination of whether the right has been violated." Cahill, 213 N.J. at 267. Thus, the inquiry is highly fact sensitive, requiring "a case-by-case analysis." Id. at 270.

Under the first Barker factor, there is no "bright-line rule" to determine whether the length of the delay is excessive. Cahill, 213 N.J. at 270, 277. However, a delay exceeding one year prompts a review of the other Barker factors. Cahill, 213 N.J. at 266. The delay here was twenty-one months measured from the date of the issuance of the summonses (November 15, 2013)

to the date of the entry of the guilty plea (August 19, 2015).  Consequently, as acknowledged by the judge, a review of the other Barker factors was warranted.

Our judiciary "is, as a matter of policy, committed to the quick and thorough resolution of DWI cases."  Tsetsekas, 411 N.J. Super. at 11 (quoting State v. Farrell, 320 N.J. Super. 425, 446 (App. Div. 1999)).  To that end, "[i]n 1984, Chief Justice Wilentz issued a directive, later echoed in Municipal Court Bulletin letters from the Administrative Office of the Courts, that municipal courts should attempt to dispose of DWI cases within sixty days."  Ibid. (quoting Farrell, 320 N.J. Super. at 446-47).  However, we have never suggested that "any delay beyond the sixty-day goal is excessive[,]" as "[t]here is no set length of time that fixes the point at which [a] delay is excessive."  Ibid.

Here, as recognized by the judge in evaluating the first Barker factor, the delay of 628 days from the issuance of the summonses to the adjudication of defendant's speedy trial motion was "substantial" and weighed in defendant's favor.  See id. at 11-12 (holding a delay of 344 days excessive); see also Farrell, 320 N.J. Super. at 428 (holding a delay between summons and trial completion of 663 days to be inexcusably extensive).  Likewise, as the judge found, the third Barker factor weighed in defendant's favor based on his "undisputed" invocation of his right.  Defendant does not appear to challenge the judge's findings on the

first and third <u>Barker</u> factors, but rather specifically disputes the judge's evaluation of the second and fourth factors. According to defendant, the judge erred in not attributing the delays caused by the "court's inexcusable failure to have conflict procedures in place to the State[,]" and in "misinterpret[ing]" the prejudice factor set forth in <u>Barker</u> and refined in <u>Cahill</u>. We disagree.

"<u>Barker</u>'s second prong examines the length of a delay in light of the culpability of the parties." <u>Tsetsekas</u>, 411 N.J. Super. at 12. "[D]ifferent weights should be assigned to different reasons" proffered to justify a delay. <u>Barker</u>, 407 U.S. at 531. In <u>Barker</u>, the Court distinguished between deliberate and negligent delay, holding the former is weighed more heavily in favor of dismissal of the prosecution than delay attributable to the State's negligence or the court's procedures and calendars. <u>Ibid.</u> Thus, while purposeful delay tactics weigh heavily against the State, <u>Tsetsekas</u>, 411 N.J. Super. at 12 (citing <u>Barker</u>, 407 U.S. at 531), "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily[,] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." <u>Barker</u>, 407 U.S. at 531.

In reviewing "the chronology of the delay," trial courts should "divid[e] the time into discrete periods of delay" as occurred here, and attribute each delay

A-5329-16T2

to "the State, defendant, or the court system." State v. May, 362 N.J. Super. 572, 596 (App. Div. 2003). Courts must then consider whether the delays "were 'reasonably explained and justified.'" Farrell, 320 N.J. Super. at 450 (quoting State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983)). Indeed, when "the State offers no explanation for the delay[,]" that "factor also weighs heavily against the State." Cahill, 213 N.J. at 274.

In Cahill, the Court acknowledged that "the usual circumstances that typically contribute to trial delays in the municipal court" include "a conflict of interest requiring recusal of the judge or the prosecutor." Id. at 273. Likewise, we have previously held that "the transfer of the matter between municipal courts," even if constituting a "significant part" of the delay, "reasonably explain[s] and justifie[s]" the lapse. Detrick, 192 N.J. Super. at 426. Here, we agree with the judge that the lengthy delay, occasioned by the revelation of the judicial conflicts and other administrative "miscue[s]" in the Franklin Township Municipal Court, was a neutral factor that was "reasonably explained and justified" the lapse. Ibid. Accordingly, that factor was properly weighed less heavily against the State or, as the judge couched it, "slightly weighted in [d]efendant's favor."

The fourth prong of the <u>Barker</u> test considers the prejudice to a defendant caused by the delay. The <u>Cahill</u> Court noted that "prejudice is assessed in the context of the interests the right [to a speedy trial] is designed to protect. Those interests include prevention of oppressive incarceration, minimization of anxiety attributable to unresolved charges, and limitation of the possibility of impairment of the defense." 213 N.J. at 266 (citation omitted). Although the impairment of an accused's defense is considered "the most serious since it [goes] to the question of fundamental fairness[,]" <u>Szima</u>, 70 N.J. at 201, "proof of actual trial prejudice is not 'a necessary condition precedent to the vindication of the speedy trial guarantee.'" <u>Tsetsekas</u>, 411 N.J. Super. at 13-14 (quoting <u>Merlino</u>, 153 N.J. Super. at 15).

Indeed, although the delay may not prejudice a

> defendant's liberty interest or his ability to defend on the merits[,] . . . significant prejudice may also arise when the delay causes the loss of employment or other opportunities, humiliation, the anxiety in awaiting disposition of the pending charges, the drain in finances incurred for payment of counsel or expert witness fees and the "other costs and inconveniences far in excess of what would have been reasonable under more acceptable circumstances."
>
> [<u>Id.</u> at 13 (quoting <u>Farrell</u>, 320 N.J. Super. at 452).]

In Cahill, the "[d]efendant [did] not identify any particular prejudice" but rather "outline[d] the employment choices he made in recognition of the impending suspension of his license to operate a motor vehicle." 213 N.J. at 275. "Th[o]se self-imposed limitations narrowed his employment options and relegated him to lower-paying positions." Ibid. The Cahill Court "conclude[d] that the extensive and unexplained delay, coupled with the generalized anxiety and personal prejudice occasioned by the protracted resolution of th[e] matter, require[d] a finding that the State violated defendant's right to a speedy trial." Ibid. (emphasis added). Here, defendant only asserts a "generalized anxiety" from awaiting the disposition in his case. We have previously stated, however, that "[t]he 'hardship' of waiting for disposition . . . , standing alone, 'is insufficient to constitute meaningful prejudice.'" State v. Misurella, 421 N.J. Super. 538, 546 (App. Div. 2011) (quoting State v. Le Furge, 222 N.J. Super. 92, 99-100 (App. Div. 1988)).

Measured against the four Barker factors, we conclude there was no violation of defendant's constitutional speedy trial right. Thus, we do not find the Law Division judge's denial of defendant's speedy trial motion to be erroneous. Without question, the delay in adjudicating this case was much too long. But, considering the valid reasons for the majority of the adjournments

and the lack of prejudice suffered by defendant except for the anxiety and stress associated with unresolved charges, we conclude there was no violation of defendant's speedy trial right, notwithstanding defendant's timely assertion of his right.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5329-16T2