793 A.2d 39 (2002)
349 N.J. Super. 62
STATE of New Jersey, Plaintiff-Respondent,
v.
Arun GAIKWAD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 2002.
Decided March 11, 2002.
*42 Mark M. Cheser, Union, argued the cause for appellant.
Wendy Alice Way, Deputy Attorney General, argued the cause for respondent (David Samson, Attorney General, attorney; Ms. Way, of counsel and on the brief).
Before Judges PETRELLA, STEINBERG and ALLEY. *40
*41 The opinion of the court was delivered by PETRELLA, P.J.A.D.
Defendant Arun Gaikwad appeals from his conviction under Monmouth County Indictment No. 98-03-0415, after a jury trial, *43 of third degree computer theft[1] (N.J.S.A. 2C:20-25c) (count one); third degree accessing a computer system (N.J.S.A. 2C:20-30) (count three); third degree unlawful access to stored communications (N.J.S.A. 2A:156A-27b) (count four); and third degree attempted accessing of a computer system (N.J.S.A. 2C:5-1 and N.J.S.A. 2C:20-30) (count five). The jury acquitted defendant of second degree theft (count two) and second degree computer theft (count one). A new trial was denied. At sentencing, the judge merged the convictions on counts four and five into that for unlawful accessing of a computer system and sentenced Gaikwad to two concurrent terms of two years of probation on counts one and three. Additionally, appropriate fines and penalties were assessed.
On appeal, Gaikwad raises the following issues:
I. Failure of the court to charge the definition of "obtain" rendered the charge on count one and count four insufficient and incomplete.
II. The court's charge on count one was insufficient and incorrect and the evidence was insufficient to convict.
III. There was insufficient evidence to sustain a conviction on count four.
IV. The jury findings on count one were inconsistent with the verdicts on counts three and five.
V. The court was required to charge the lesser included offense of N.J.S.A. 2C:20-32.
VI. The court's charge on counts three and five was insufficient.
VII. The court failed to charge an affirmative defense pursuant to N.J.S.A. 2C:20-2 and 2C:20-27(b).
VIII. Authorization to access AT & T systems was not sufficiently explained given the testimony adduced in the case.
IX. The court improperly restricted cross-examination of the credibility of Michael Romano.
X. The indictment should have been dismissed on Sixth Amendment speedy trial grounds.
Prior to trial, Gaikwad's motion to dismiss the indictment on speedy trial grounds was denied. Defendant's attorney's motion to be relieved as counsel was granted and Gaikwad proceeded to trial pro se before a jury.
The following facts were developed at the trial. On September 3, 1996, Lori Kershner, a software developer with AT & T at its Red Hill location, logged onto her computer at work and noticed that the last date and time she accessed her account as reported by the computer appeared odd as it did not appear to be a time when she had logged on to the system. Although the login reported that she had recently logged on to the "trumpet system," she had not personally logged on to that system in several days. Kershner then accessed her account's history file to determine why the computer reported that she had logged onto the trumpet system. This file revealed a variety of UNIX commands which she was positive she had not entered, including a connection to AT & T's "uhura" system through a remote login command;[2] an attempt to access the mail *44 directory and home account of Mike Romano, an AT & T Supervisor; and an attempt to delete her history file so as to erase the record of entered commands. However, unbeknownst to the intruding user, Kershner used a different name for her history files, and thus, her history files were not erased. From these observations it became evident to Kershner that someone had broken into her account. As a result, she contacted Dave Williamson, a co-worker with a substantial knowledge of the UNIX operating system.
After discussing the matter, Kershner and Williamson called Charles Bennett of corporate security. Williamson discussed the break-in with Bennett, Glenn Evans, and the AT & T District Manager. They determined that Kershner's account had been accessed without authorization using the ".rlogin" command to edit her ".rhosts" file and then using the shortcut to navigate through systems, deleting all commands and changing the file back upon exiting the system.
On September 6, 1996, Williamson installed a program that would notify him any time Kershner's account was modified. He also installed monitoring devices to trace the intruder's actions once in her account. Williamson determined that the intruder's originating account was through a group account labeled "INT" with a single user password accessed by multiple users to test software. He then traced the access to the INT account back to the harbor system, which had been accessed through a network providing access to various AT & T systems. Williamson concluded from security billing records that the access was from outside the AT & T Red Hill location, and specifically from the Corporate Wide Area Network, and an originating group with the name "841/297/erredfs1," and the "node name" "m97a."
From this it was further learned that the originating group was located at 580 Howard Avenue, Somerset, in a building shared by AT & T and Lucent Technologies, which had recently been spun-off from AT & T as a separate company. The node name m97a, however, belonged to Lucent.
Williamson went to Bennett with his findings and they met with Lucent's Security Manager, District Manager, and a representative from its Outsourcing Contractor, IBM Global Securities. By examining network server logs, Norborne Preas of IBM was able to determine the precise computer terminal that had accessed the AT & T system from an office occupied solely by Gaikwad.
At that time, Gaikwad was a contract employee with Lucent and was employed as a full time software developer on August 2, 1996. Gaikwad's employment with Lucent did not anticipate or require access to the AT & T computer system. Prior to his employment with Lucent, Gaikwad was a contract employee of AT & T from November 11, 1992 to July 31, 1996, as a software developer and tester. Gaikwad's supervisor during that time, Michael Romano, testified that Gaikwad's performance was generally good but towards the end of his employment there was a drop off in performance which, combined with management's desire to reduce staff, led to his dismissal. Gaikwad's individual username and password were locked out of the AT & T system when he was dismissed on July 31, 1996.
Preas installed a database monitor on Gaikwad's terminal on September 12, 1996. This monitor was a security device which captured all activity to and from the terminal and enabled security to monitor and capture every strike of the keyboard at Gaikwad's terminal. On September 29, 1996, security installed a pin hole surveillance *45 camera in the office which confirmed that Gaikwad was responsible for the commands captured by the database monitor.
AT&T's investigation revealed that from August 2 to October 5, 1996, Gaikwad accessed AT & T's system, without authorization, from his terminal at Lucent 144 times. On October 9, 1996, the State Police obtained a warrant for Gaikwad's arrest. On October 10, 1996, he was arrested.
AT&T's District Manager, Joseph Zeigler reviewed the print-out logs from the database monitor from September 16, 1996 to October 10, 1996. He concluded that they revealed a consistent pattern of Gaikwad entering into various coworkers' individual accounts using the trusted hosts shortcut feature, impersonating the user, copying their electronic mail to the directory he was located in so that he could view the contents of the mail without detection, and using a shell to avoid leaving a history of commands on the account or simply deleting the history. Zeigler testified that copying the file prevented the legitimate user from knowing Gaikwad had accessed it. The State presented a step by step, keystroke by keystroke, reenactment of Gaikwad's entering into certain co-workers' systems and reading of their mail. At trial, Williamson presented examples of sensitive proprietary information actually accessed by Gaikwad through reading co-workers' e-mail, including various e-mails regarding an AT & T bid for a system to monitor capacity management of telephone call volume that could have been used by AT & T's competitors to obtain an unfair advantage.
Due to Gaikwad's unauthorized access, AT & T was forced to employ certain remedial measures to ensure security. First, they shut down all the systems Gaikwad had accessed without notice to its users prior to Gaikwad's arrest. Williamson testified that shutting down the systems without notice was a great inconvenience to its users but was necessary because AT & T did not want news of the shut down to get back to Gaikwad or any other unauthorized users. After Gaikwad was arrested they reloaded the systems with new software, disrupting the systems and their users for several days. Additionally, all access through group accounts was blocked and all .rhosts files were removed, eliminating the trusted host shortcuts between computer systems, thus inconveniencing legitimate users of the shortcuts. Zeigler placed the cost of the investigation and the cost of the four systems administrators involved in reloading the systems at $21,875. He also estimated that the disruption in service of the systems affected fifty users at a cost of $35,000, for a total of $56,875, not including AT & T's corporate security costs.
Gaikwad testified in his own defense that he was authorized by Romano to access AT & T's computer system to check the status of, and to aid in developing, the projects he was working on when he left AT & T. He asserted that Romano and his co-workers called him after he left for help with the project. Gaikwad further stated that he accessed the AT & T system to determine whether the project was to be canceled. If he discovered that the project was to be canceled, he intended to alert his friends still working on the project of the pending cancellation.
Romano testified he told Gaikwad they would call him if they had any questions, but did not recall giving him permission to log back onto the AT & T system to work on the project. Although two co-workers acknowledged calling him regarding problems with the software, the problems did not require Gaikwad to log onto AT & T's system. Furthermore, Gaikwad's former co-workers testified that they had not given *46 him permission to access their electronic mail. Moreover, the logs revealed that Gaikwad had accessed the files of AT & T employees with whom he had never worked closely and accessed, or attempted to access, systems that he never had authorization to enter, even when employed by AT & T. Williamson contradicted Gaikwad's assertion that he was authorized to access the system, stating that access through a group account rather than a personal account and the deletion of history files were inconsistent with the actions of a legitimate user.

I.
Gaikwad challenges the judge's jury charge instructions in several respects. He claims the judge erred in failing to (1) charge the definition of the word "obtain" in N.J.S.A. 2C:20-25c; (2) charge the definition of electronic communications in N.J.S.A. 2A:156A-2m, the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretapping Act); (3) charge N.J.S.A. 2C:20-32 as a lesser included offense of N.J.S.A. 2C:20-30; (4) charge that under N.J.S.A. 2C:20-30, it is necessary to prove more than merely "accessing" a computer system; (5) charge the "affirmative defenses" of N.J.S.A. 2C:20-33 and N.J.S.A. 2C:20-27b; and (6) sufficiently explain access to the AT & T system as opposed to individual files.
We note initially that Gaikwad did not object to the charge at trial. R. 1:7-2 provides that "no party may urge as error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its verdict...." This is because "[t]he absence of an objection ... prevent[s] the trial judge from remedying any possible confusion in a timely fashion." Bradford v. Kupper Assoc., 283 N.J.Super. 556, 573-574, 662 A.2d 1004 (App.Div.1995), certif. denied, 144 N.J. 586, 677 A.2d 759 (1996). However, "the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court." R. 2:10-2. See State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L. Ed.2d 797 (1970).
There is no reversible error "where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury...." Fischer v. Canario, 143 N.J. 235, 254, 670 A.2d 516 (1996).

A.
Gaikwad asserts that in charging the jury as to N.J.S.A. 2C:20-25c, the judge erred in not using the statutory definition of the word "obtain" in N.J.S.A. 2C:20-1f. As of the time of the trial there were no model jury charges for computer theft, nor do any exist at this time. The judge's charge closely paralleled the language of N.J.S.A. 2C:20-25c and included the statutory definitions for computer theft in N.J.S.A. 2C:20-23. N.J.S.A. 2C:20-23 does not define "obtain." A definition of "obtain" is found in the general definition section to theft and theft related offenses and provides that "`Obtain' means: (1) in relation to property, to bring about a transfer or purported transfer of a legal interest in the property, whether to the obtainer or another; or (2) in relation to labor or service, to secure performance thereof." N.J.S.A. 2C:20-1f. Gaikwad contends that "[t]his is not the common meaning of `obtain'" and the failure of the judge to charge the statutory definition constitutes reversible error.
When an instruction in the statutory language does not sufficiently guide the jury "the definition and construction of pertinent terms for the jury" is required. *47 State v. Afanador, 134 N.J. 162, 183, 631 A.2d 946 (1993) (O'Hern, J., dissenting) (quoting State v. Olivio, 123 N.J. 550, 567, 589 A.2d 597 (1991)). There is scant basis for Gaikwad's assertion that the quoted statutory definition of "obtain" differs markedly from the common meaning of the term. Obtain is defined as "[t]o gain possession of, especially by effort; acquire; get." Funk & Wagnalls New Comprehensive International Dictionary of the English Language, 873 (1978). There is little difference between the statutory definition of obtain and the dictionary definition. Assuming the jury applied the common meaning of the term, N.J.S.A. 2C:20-25c provided sufficient guidance such that the jury did not need further clarification of that commonly used word. Not instructing on the statutory definition of obtain did not possess the capacity to bring about an unjust result under R. 2:10-2.

B.
Gaikwad also claims that the judge erred in failing to charge the statutory definitions of the terms "obtain" and "electronic communications" in the instructions on N.J.S.A. 2A:156A-27b. Gaikwad appears to argue that because the definition of electronic communications in the Wiretapping Act, at N.J.S.A. 2A:156A-2m, excludes certain wire communications, N.J.S.A. 2A:156A-27b does not apply to his access of stored e-mails, and thus, there was insufficient evidence for the jury to convict him on count four. We reject this argument as without merit. There was no error in the judge's instruction.
N.J.S.A. 2A:156A-27b provides:
A person is guilty of a crime of the third degree if, for the purpose of commercial advantage, private commercial gain, or malicious destruction or damage, he (1) knowingly accesses without authorization a facility through which an electronic communication service is provided or exceeds an authorization to access that facility, and (2) thereby obtains, alters, or prevents authorized access to a wire or electronic communication while that communication is in electronic storage.
N.J.S.A. 2A:156A-2 defines both "wire communications" and "electronic communications":
a. "Wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception.... "Wire communication" includes any electronic storage of such communication, and the radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit[.]
* * *
m. "Electronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric or photo-optical system that affects interstate, intrastate or foreign commerce, but does not include:
(1) Any wire or oral communication;
(2) Any communication made through a tone-only paging device; or
(3) Any communication from a tracking device[.]
Reading the two definitions together, it is clear that the Legislature intended to cover the wide spectrum of potential communications made possible through technological advances. As defined, wire communications include aural communications and the electronic storage of aural communications. Therefore, electronic *48 transfers such as electronic mail, or e-mail, are not excluded from the definition of electronic communications as wire communications as Gaikwad appears to argue. To the contrary, N.J.S.A. 2A:156A-27b was clearly intended to apply to conduct such as Gaikwad's, i.e., the knowing, unauthorized access, reading and copying of electronic mail stored in another's mailbox.
Here the verdict indicates that the jury properly applied the term electronic communications to the improperly accessed e-mail. While it may have been preferable for the trial judge to have charged the definition of "electronic communications," the judge's failure to do so clearly did not produce an unjust result warranting reversal. R. 2:10-2.
As to the judge's failure to charge the statutory definition of the word obtain, we observe that unlike N.J.S.A. 2C:20-1 et seq., no statutory definition of obtain is contained in N.J.S.A. 2A:156A-1 et seq. Where no definition is provided by the Legislature the plain meaning of the term is to be applied. State in the Interest of M.G., 307 N.J.Super. 348, 354, 704 A.2d 1025 (App.Div.), certif. denied, 154 N.J. 607, 713 A.2d 498 (1998). Moreover, the term obtain is not a legal term which must be defined for the jury to understand its plain meaning. Simply put, there was no error in the judge not charging a definition of "obtain."

C.
Gaikwad further argues that the judge erred in failing to charge the disorderly persons offense in N.J.S.A. 2C:20-32 as a lesser included offense of N.J.S.A. 2C:20-30. Although the State requested such a lesser included offense charge, it was not given by the judge.
N.J.S.A. 2C:1-8e provides that "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." State v. Brent, 137 N.J. 107, 113-114, 644 A.2d 583 (1994), noted that the statute requires "not only a rational basis in the evidence for a jury to convict the defendant of the included offense but requir[es] also a rational basis in the evidence for a jury to acquit the defendant of the charged offense before the court may instruct the jury on an uncharged offense" [emphasis omitted].
Applied here, there is no rational basis in the evidence for the jury to find Gaikwad not guilty of N.J.S.A. 2C:20-30 and guilty of N.J.S.A. 2C:20-32. N.J.S.A. 2C:20-30 provides that "[a] person is guilty of a crime of the third degree if he purposely and without authorization accesses, alters, damages or destroys a computer system or any of its parts, where the accessing and altering cannot be assessed a monetary value or loss." N.J.S.A. 2C:20-32 provides that "[a] person is guilty of a disorderly persons offense if he purposely and without authorization accesses a computer or any of its parts and this action does not result in the altering, damaging or destruction of any property or services." Thus, the statutes prohibit similar conduct, but differ in degree based upon whether that conduct caused some damage or destruction to the computer system or its parts. In general, N.J.S.A. 2C:20-30 applies where there is a monetary loss, but that loss cannot be properly measured, while the disorderly persons offense in N.J.S.A. 2C:20-32 applies where the accessing "does not result in the altering, damaging or destruction of any property or services, and, a monetary value or loss cannot be assessed." Thus, for the jury to acquit on N.J.S.A. 2C:20-30 and *49 convict on N.J.S.A. 2C:20-32, it must find that there was unauthorized access, but no damage resulted. However, there is no rational basis for such a finding here.
The record is replete with testimony from the State's experts regarding the damage caused by Gaikwad's unauthorized entry. Although this testimony may have created a question as to the valuation of the damage, and whether it was quantifiable, there was little question as to whether damage actually occurred.
Moreover, Gaikwad never disputed that his access caused damage. Instead, his defense was based upon a claim of right. He maintained throughout the trial that he was given authorization to access the AT & T network by Romano. Thus, the central issue at trial was whether Gaikwad had authorization to access the system. Because the record does not support a finding that Gaikwad accessed the system without authorization and without causing damage, the judge did not err in failing to charge N.J.S.A. 2C:20-32.

D.
Additionally, Gaikwad asserts that the judge erred in not charging the "affirmative defenses" under N.J.S.A. 2C:20-33 and N.J.S.A. 2C:20-27b. Preliminarily, the New Jersey Criminal Code does not designate either N.J.S.A. 2C:20-33 or N.J.S.A. 2C:20-27b as an affirmative defense. Nevertheless, even assuming arguendo that these sections are applicable defenses, there is no rational basis in the record to support application of either of those statutory sections.
N.J.S.A. 2C:20-27b provides that "[a] person is guilty of a crime of the fourth degree if he purposely or knowingly accesses and recklessly alters, damages, destroys or obtains any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network with a value of at least $500.00 but less than $75,000.00." Subsection b is better described as a lesser included offense of computer theft under N.J.S.A. 2C:20-25 than as an affirmative defense in that the facts necessary to prove both offenses are the same, except that under N.J.S.A. 2C:20-27b the prosecution need only show that the defendant recklessly caused the consequences of his knowing access of the computer system. See N.J.S.A. 2C:1-8d. This lesser level of culpability would warrant a fourth degree rather than a third degree conviction.
The record clearly demonstrates that all of Gaikwad's actions were intentional and there is no basis for a finding of recklessness. Gaikwad's unauthorized access into AT & T's system and his unauthorized entry into individual employee's accounts were reproduced in great detail at trial. Furthermore, the jury observed Gaikwad's video-taped access to electronic mail files and his copying of those files so that he could read their contents. As stated by the trial judge on the motion for a new trial, "the technical aspects of the intrusions belie reckless conduct."
Moreover, as previously stated, Gaikwad's defense that he was authorized to enter the system was inconsistent with any claim of recklessness. Thus, there was no basis for a jury instruction based on his acting recklessly under N.J.S.A. 2C:20-27b. It was not plain error for the judge to decline to charge N.J.S.A. 2C:20-27b as there is no rational basis in the evidence for the jury to find Gaikwad not guilty of N.J.S.A. 2C:20-25c and guilty of N.J.S.A. 2C:20-27b.
Next, we address Gaikwad's claims regarding N.J.S.A. 2C:20-33. That statute provides that "[t]he copying or altering of a computer program or computer *50 software shall not constitute theft ... if the computer program or software is of a retail value of $1,000.00 or less and is not copied for resale." Here, the record reveals that Gaikwad accessed AT & T's computer system without authorization, then accessed the accounts of various individuals on the AT & T system and copied and read their electronic mail, thereby obtaining sensitive information. There is no indication from the record, however, that Gaikwad was engaged in the copying of computer programs or software. As stated, it appears that he only copied electronic mail, through which he obtained sensitive and confidential company information. This is not the type of conduct that the Legislature intended to prohibit under N.J.S.A. 2C:20-33.

E.
Gaikwad further argues that the charge on N.J.S.A. 2C:20-30 was insufficient. Specifically, he contends the judge should have charged that: (1) N.J.S.A. 2C:20-30 requires the State to prove "accessing" and "altering"; and (2) N.J.S.A. 2C:20-30 relates only to a computer system and not to individual computers. These contentions lack merit.
N.J.S.A. 2C:20-30 is entitled "Accessing and Altering Where No Monetary Value Can Be Assessed." Based solely upon its title, Gaikwad argues that the statute requires the State to prove accessing and altering. However, the title is not part of the statute. N.J.S.A. 1:1-6. Moreover, Gaikwad's interpretation is contrary to a plain reading of the statute. As stated, N.J.S.A. 2C:20-30 prohibits unauthorized access, altering, damaging or destroying of a computer system. Beyond proving access, the State need only demonstrate that the access caused some damage which cannot be assessed a monetary value or loss.
Nor was it plain error for the judge not to explain to the jury that N.J.S.A. 2C:20-30 applies only to computer systems and not individual computers. Similarly, Gaikwad's claim that the judge did not properly explain, as part of the claim of right charge, the difference between accessing the entire AT & T system without authorization and the unauthorized access of electronic mail files of individual employees is also without merit. The judge charged the language of the statute, went through each element of the statute and provided the jury with a copy of N.J.S.A. 2C:20-23, which includes the statutory definition of "computer system." Thus, the jury was aware that the statute only applies to computer systems and knew that the definition of computer systems did not include individual computers.
Further, the evidence clearly indicated that, aside from his entry into the AT & T system for which he claimed authorization, Gaikwad accessed or attempted to access internal systems within the greater AT & T system such as the "Uhura" and "Hugo" systems that he was unauthorized to enter even when he was employed at AT & T. Considering the overwhelming evidence of unauthorized access, the lack of explicit differentiation between a "computer system" and an individual computer in the N.J.S.A. 2C:20-30 and claim of right jury charges was not capable of producing an unjust verdict.
In sum, the jury charge on all counts, read as a whole, did not confuse or mislead the jury and Gaikwad has failed to demonstrate plain error capable of leading the jury to an unjust result.

II.
Gaikwad's claim that the jury was improperly charged and that there was insufficient evidence for the jury to convict him *51 of computer theft on count one is similarly unpersuasive. Therefore, the trial judge properly denied Gaikwad's R. 3:20-1 motion for a new trial on those grounds.
R. 3:20-1 provides that a trial judge shall grant a motion for a new trial if, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." See State v. Sims, 65 N.J. 359, 373-74, 322 A.2d 809 (1974). On appeal, our standard of review is essentially the same. The trial judge's ruling "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1; accord Feldman v. Lederle Lab., 97 N.J. 429, 463, 479 A.2d 374 (1984) (The standard is substantially similar except that due deference should be made to the trial court's "`feel of the case,' and `matters of credibility.'"); Dolson v. Anastasia, 55 N.J. 2, 7, 258 A.2d 706 (1969).
Gaikwad argues that the judge erred in not employing a more restrictive reading of N.J.S.A. 2C:20-25c and by not instructing the jury as to that more restrictive interpretation, thereby resulting in a conviction that was not supported by the evidence. Gaikwad contends that when reading the subsections of N.J.S.A. 2C:20-25 together, the entire statute reveals that the Legislature did not intend subsection 25c to apply to his conduct. He also claims the State failed to prove beyond a reasonable doubt that he accessed the computer system "for the purpose of executing a scheme to defraud, or to obtain services, property, or money, from the owner of a computer or any third party."
Gaikwad was not tried for executing a scheme to defraud. The proofs did establish that he accessed AT & T's computer files, made copies, viewed and deleted the copies, and in the process compromising the integrity of AT & T's system, with attendant necessity for costly remedial action. With respect to "obtain[ing] services, property, or money," Gaikwad argues that because subsection a of the statute prohibits taking as opposed to obtaining, the Legislature intended subsection c to be more narrow in accordance with the definition of "obtain" in N.J.S.A. 2C:20-1f. See supra, Point IA. We disagree.
The definition of "obtain" in the statute with respect to property, "to bring about a transfer or purported transfer of a legal interest in the property," could also be used to define "taking." As noted above, the definition of obtain provided by the Legislature does not differ markedly from its plain and ordinary meaning. Moreover, taking is not defined by the Legislature, and thus, there is no basis to compare two definitions to determine whether the Legislature intended one term to be narrower than the other. Simply because Gaikwad could have been convicted of taking data under subsection 25a, an offense for which he was not indicted, does not indicate that his conviction under subsection 25c was improper.
Our review of the record reveals ample evidence to support the jury's verdict. There was no miscarriage of justice which would warrant reversal of the denial of a new trial. A conviction under N.J.S.A. 2C:20-25c required the prosecution to prove beyond a reasonable doubt that Gaikwad (1) purposely or knowingly and without authorization accessed any individual AT & T computer or the AT & T computer system (2) to obtain services, property or money from AT & T or a third party. N.J.S.A. 2C:20-26 through 2C:20-29 address the valuation of the damages caused by the unauthorized access.
*52 As discussed at length above, Gaikwad's defense at trial went to the first element of the statute. Gaikwad admitted that he accessed AT & T's system and read co-workers' electronic mail, but that he had been authorized to do so by his former supervisor. The purposeful nature of Gaikwad's actions was well documented by the AT & T database monitor, which demonstrated his attempts to access systems within the AT & T system to which he did not have access even when he was an employee, as well as the access of the individual electronic mail of co-workers with whom he had never worked. On numerous occasions he copied, and thus obtained, co-workers' electronic mail so that he could read it on his system without being detected. Williamson testified that on at least three occasions Gaikwad obtained highly sensitive proprietary information through co-worker e-mail which could have been used to gain an unfair competitive advantage against AT & T. Moreover, there was testimony that even if Gaikwad was authorized to enter the system and had a valid username and password, he would enter through that personal account rather than a group account and he would not delete the history files of the individual accounts. Considering the State's evidence, the jury could well have found that Gaikwad was not credible and determined that he knowingly and purposefully accessed the AT & T system and individual accounts without authorization. Thus, there was sufficient evidence as to each element of N.J.S.A. 2C:20-25c, so that there was no miscarriage of justice in the jury's verdict.
Gaikwad further argues that N.J.S.A. 2C:20-27a requires that for conviction of computer theft in the third degree the State must prove that the value of the property or services obtained in violation of N.J.S.A. 2C:20-25c was at least $500, but less than $75,000. The plain language of N.J.S.A. 2C:20-27a indicates however, that the statute is not so restrictive. The State need only prove that the damages flowing from the unauthorized entry into the computer system had a value of at least $500, but less than $75,000. Thus, we reject Gaikwad's claim as without merit.

III.
Gaikwad asserts that the jury's verdict on count one, third degree computer theft, was inconsistent with the verdicts on counts three (the third degree accessing and altering where no monetary value can be assessed) and five (the third degree attempted accessing and altering convictions) because on count one the jury placed a value on damages and on counts three and five found that no value could be assessed. We disagree.
Generally, there is no requirement in criminal cases that jury verdicts be consistent. State v. Grey, 147 N.J. 4, 9-10, 685 A.2d 923 (1996); State v. Scherzer, 301 N.J.Super. 363, 485, 694 A.2d 196 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997). Inconsistent verdicts are permissible so long as there is sufficient evidence in the record "to permit a rational factfinder to find a defendant's guilt beyond a reasonable doubt on the charges on which the defendant was convicted." State v. Ellis, 299 N.J.Super. 440, 456, 691 A.2d 403 (App.Div.), certif. denied, 151 N.J. 74, 697 A.2d 546 (1997). Accord State v. Grey, supra (147 N.J. at 10, 685 A.2d 923).
Here, the evidence demonstrated that from August 2 to October 5, 1996, Gaikwad accessed the AT & T system without authorization on 144 separate occasions. Gaikwad's access compromised AT & T's security and as a result AT & T was forced to implement certain remedial actions *53 which the State's expert valued at $56,875. Moreover, there was evidence that on several occasions Gaikwad unsuccessfully attempted to access certain AT & T internal systems. Through his unlawful access, Gaikwad accessed sensitive proprietary business information.
Based upon the evidence the jury could have reasonably determined that of the 144 times Gaikwad accessed the system, certain unauthorized entries resulted in quantifiable damage, while other entries, such as those in which he obtained proprietary information, resulted in loss that was not quantifiable. Moreover, the jury could also have found defendant guilty of attempted accessing, count five, based upon his numerous failed attempts. Thus, there is no inconsistency in the verdicts which would warrant reversal.

IV.
Next, Gaikwad claims that the judge improperly restricted Gaikwad's cross-examination of Romano. Gaikwad argues that the judge limited his ability to question Romano as to certain prior inconsistent statements impinging his credibility and, as a result, Romano's testimony that Gaikwad was not authorized to enter the AT & T system went unchallenged. This argument is unpersuasive.
As an element of the right to confront witnesses, criminal defendants are guaranteed the right to cross-examine witnesses for the prosecution by the Sixth Amendment to the United States Constitution and Art. I, Par. 10 of the New Jersey Constitution. State v. Harvey, 151 N.J. 117, 187-188, 699 A.2d 596 (1997), cert. denied sub. nom., 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). However, the right to cross-examine is not unlimited. Id. at 188, 699 A.2d 596. "It is well-established that the scope of cross-examination is a matter for the control of the trial court and an appellate court will not interfere with such control unless clear error and prejudice are shown." State v. Murray, 240 N.J.Super. 378, 394, 573 A.2d 488 (App.Div.), certif. denied, 122 N.J. 334, 585 A.2d 350 (1990). Accord State v. Harvey, supra (151 N.J. at 188, 699 A.2d 596); State v. Martini, 131 N.J. 176, 619 A.2d 1208 (1993).
While we recognize that "[a] paramount purpose of cross-examination is the impeachment of the credibility of the witness," Cavanaugh v. Skil Corp., 331 N.J.Super. 134, 174, 751 A.2d 564 (App.Div.1999), aff'd, 164 N.J. 1, 751 A.2d 518 (2000), (quoting Perna v. Pirozzi, 92 N.J. 446, 457 A.2d 431 (1983)), "a cross-examiner does not have a license to roam at will under the guise of impeaching credibility." State v. Engel, 249 N.J.Super. 336, 375, 592 A.2d 572 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1991). The record demonstrates that the judge properly exercised his discretion in limiting the scope of Gaikwad's cross-examination to the relevant issues in the case. The judge limited Gaikwad's cross-examination of Romano on two occasions, and this was solely because Gaikwad's questioning of Romano focused on the quality of Gaikwad's work and the reason why he was terminated from AT & T, issues which were clearly irrelevant to whether he committed the charged offenses.
Gaikwad's opportunity to cross-examine Romano on prior inconsistent statements to the State Police regarding whether he provided Gaikwad with authorization was not limited by the Judge. On the contrary, when Gaikwad finally raised the question of Romano's authorization to access the AT & T system, Gaikwad made no mention of Romano's prior statements to the State Police. Gaikwad's only reference to the police report was to dispute *54 Romano's stated reasons for his termination, which was ruled admissible. Thus, we are satisfied from the record that the judge did not abuse his discretion with respect to the scope of Gaikwad's cross-examination.

V.
Lastly, Gaikwad alleges that the trial judge erred in denying his motion to dismiss the indictment on speedy trial grounds. The judge found that the seventeen month delay between arrest and indictment was not unduly lengthy and Gaikwad had not suffered any prejudice by the delay. We agree.
The Sixth Amendment guarantees criminal defendants the right to a speedy trial and that right is applied to the states by the Fourteenth Amendment. Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L. Ed.2d 101, 108-109 (1972); see also R. 3:25-3 (providing that a defendant may move to dismiss, or the court may sua sponte dismiss an indictment for unreasonable delay). The protections afforded by the Sixth Amendment are triggered upon either arrest or indictment. State v. Szima, 70 N.J. 196, 199-200, 358 A.2d 773, cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L. Ed.2d 180 (1976); State v. Alexander, 310 N.J.Super. 348, 352-353, 708 A.2d 770 (App.Div.), certif. denied, 156 N.J. 408, 719 A.2d 640 (1998). In Barker v. Wingo, supra (407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116-117), the Supreme Court established four factors for courts to consider in determining whether a defendant's right to a speedy trial has been violated. The criteria include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Ibid.; accord State v. Szima, supra (70 N.J. at 201, 358 A.2d 773); State v. Cappadona, 127 N.J.Super. 555, 558, 318 A.2d 425 (App.Div.), certif. denied, 65 N.J. 574, 325 A.2d 707 (1974).
We are satisfied that the seventeen month delay between Gaikwad's arrest and indictment was not unreasonable. The delay here appears to have been the result of the complexity of the subject matter of the case and not "[a] deliberate attempt to delay the trial in order to hamper the defense...." Barker v. Wingo, supra (407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117) (noting as an example that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge"); see also State v. Douglas, 322 N.J.Super. 156, 171, 730 A.2d 451 (App.Div.1999) (holding that three year delay in a capital prosecution does not "give rise to prejudice or denial of the right to [a] speedy trial"), certif. denied, 162 N.J. 197, 743 A.2d 849 (1999). Furthermore, Gaikwad did not assert his right to a speedy trial until after the indictment.
Turning to the question of prejudice, the Court has identified three factors of prejudice: "oppressive pretrial incarceration, anxiety and concern of the accused and impairment of the defense." State v. Szima, supra (70 N.J. at 201, 358 A.2d 773); accord Barker v. Wingo, supra (407 U.S. at 531, 92 S.Ct. at 2192, 33 L. Ed.2d at 117). Gaikwad did not suffer lengthy pretrial incarceration and does not claim anxiety and concern. His sole claim of prejudice is that his defense was impaired by the delay. He argues that this is evidenced by "numerous instances of failed memory concerning authorization." However, the record does not reflect this. While Romano did not remember some of the specific details surrounding Gaikwad's work at AT & T, he was quite clear that he had not authorized Gaikwad to access AT & T's system after his dismissal to help with projects. Nor did he authorize him to *55 access Romano's individual account. Thus, in balancing these factors it is clear that Gaikwad was not denied his right to a speedy trial.
Affirmed.
NOTES
[1] The first count charged defendant with second degree computer theft, but defendant was only found guilty of third degree computer theft, a lesser included offense.
[2] Remote login commands are described as shortcuts that allow individual users to move through the internal systems, such as trumpet or uhura, without having to reenter a login I.D. and password each time for each system. Remote login commands are set up in a file named ".rhost." Such remote login shortcuts are referred to as "trusted hosts."