**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3912-17T2

YONG JAE LEE,

      Plaintiff-Respondent,

v.

MI Y. KIM,

      Defendant-Appellant.

_____

Submitted May 9, 2019 – Decided June 17, 2019

Before Judges Whipple and Firko.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2860-16.

Cho Legal Group, LLC, attorneys for appellant (Kristen M. Logar, on the briefs).

Yong Jae Lee, respondent pro se.

PER CURIAM

     Defendant Mi Y. Kim appeals from a judgment entered on April 10, 2018

by Judge Linda Grasso Jones, following an eight-day jury trial in this breach of

contract action in favor of plaintiff Yong Jae Lee and dismissing the counterclaim. For the reasons that follow, we affirm.

I.

Defendant is the owner of Golden Farm Market ("the market") located in Howell. She hired Kangbae Lee to assist her in constructing a building on the land she purchased for the market. In 2010, Lee was unable to complete the construction. Defendant formerly owned and operated the market with her ex-husband prior to their divorce. Thereafter, defendant was introduced to plaintiff, a self-employed mortgage broker and general contractor, who offered to assist her with the construction and running her business.

On December 3, 2010, the parties entered into a partnership agreement which provided:

> 3. **OWNERSHIP**. [Defendant] as Founder of the Corporation, shall hold a [seventy-five percent] equity interest in the Corporation. [Plaintiff] shall hold a [twenty-five percent] equity interest in the Corporation and additionally shall receive a weekly salary of $1,000 (the "Weekly Salary") beginning on the date the store opens for business. [Plaintiff] shall be eligible to purchase an additional [fifteen percent] equity interest in the Corporation (the "Additional Equity Interest") in exchange for a payment of $175,000 to [defendant]. Once [plaintiff] has purchased the Additional Equity Interest, he shall no longer be eligible to receive the Weekly Salary ($1,000).

2

4. **CAPITAL**. [Defendant] shall provide all capital contributions for the purchase and development of the property . . . and has full ownership in the real estate located on that property. [Defendant] shall also provide all capital contributions for all expenses up to and until the Corporation is open for business and achieving a profit. After the Corporation has achieved a profit, the Corporation shall be responsible for paying rent to [defendant] equal to the property's monthly mortgage payments.

5. **PROFIT AND LOSS**. The net profits of the partnership shall be divided between the partners in equal proportion to their equity interests.

According to the partnership agreement, plaintiff would not contribute any funds to the business, and he would assume control of daily management responsibilities, while defendant had final authority regarding business decisions. In consideration for his sweat equity, plaintiff claims defendant agreed to give him a twenty-five percent ownership interest in the business plus $1000 weekly in wages, which he never received. Plaintiff testified he was not responsible for any of the company's liabilities and he was entitled to receive profits. Because she was divorced and only had a high school education while plaintiff had an MBA, defendant claims she relied on plaintiff to run the business. Her understanding was plaintiff would receive twenty-five percent of the profits, and not a twenty-five percent ownership interest.

3

In March of 2011, construction of the market was completed. Plaintiff selected an accountant to prepare the market's tax returns. The 2011, 2012, and 2013 market tax returns all listed defendant as the one-hundred percent owner of the business. Defendant alleges plaintiff never told the accountant he was a twenty-five percent owner of the business.

Plaintiff suggested expanding the market and adding a take-out restaurant at a cost of $400,000, to which defendant agreed, and she also agreed to provide the financing. The restaurant turned out to be unprofitable and closed six months later. The expansion and restaurant construction were financed using equitable distribution monies defendant received from her divorce matter plus a loan. Plaintiff procured the loan, and he was not listed as an owner of the business on the loan documents. Defendant alleges she felt pressured and intimidated by plaintiff to agree to the expansion and restaurant against her wishes. She further alleges plaintiff refused to work in the restaurant, became "lazier and lazier," and let it sit empty and unstaffed, despite his assurances he would make it a success. Plaintiff claims he supervised sixteen employees, purchased goods, maintained the store, managed multiple vendors, and dealt with governmental licensing issues.

4

Defendant alleges several other incidents where plaintiff was derelict in his duties, such as leaving work early to go to the gym, picking up his children during work hours, and neglecting to cover the cash register, spending time in his office instead. Plaintiff allegedly took money for gas, his EZ-Pass, personal cell phone, health insurance for his entire family, and produce from the market, which defendant claims he was not entitled to do pursuant to their agreement. Defendant confronted plaintiff about his family health insurance plan and he responded that his wife, an attorney, was unemployed, so he unilaterally decided to add his family to the market's plan.

Plaintiff allegedly persuaded defendant to invest $300,000 cash into the business because money was short "continuously." Around this time, defendant advised plaintiff she wanted her brother to start managing the market, and she asked plaintiff to leave because he was not doing his job. In response, plaintiff demanded that defendant liquidate the business and pay him $500,000. Instead, defendant offered plaintiff $150,000 as a buy-out, which he agreed to.

On October 2, 2014, the parties signed a document entitled, Agreement to Purchase Shares ("the 2014 Agreement"). The 2014 Agreement indicated plaintiff owned shares in the market based upon an oral agreement, and he was required to surrender his shares to a transfer agent. The 2014 Agreement also

provided that defendant had to pay plaintiff the sum of $100,000 on September 30, 2014, and $50,000 on March 15, 2015 to complete his buy-out. On the first due date, defendant paid plaintiff $100,000 in cash, but she defaulted as to the $50,000 payment because she claimed plaintiff was stealing cash from the business. Defendant alleges that the business was losing money, and no profits would be paid to plaintiff.

Before plaintiff's departure, defendant asked him to prepare an accounting, but he declined to do so. She never followed up on her request because she was "afraid" of plaintiff. At a later date, defendant learned that the business had minimal cash deposits, which led her to believe plaintiff was stealing money. The market was valued at approximately $900,000, and the real property it was situated on was valued at approximately $2.2 million. Plaintiff's name was not removed from any of the accounts he had managed, thus he continued to receive calls from the market's insurance company, state tax collectors, ADP payroll services, and other vendors, even though he no longer was compensated.

After defendant failed to tender the remaining $50,000 due under the 2014 Agreement, plaintiff filed the within action for breach of contract to recover the outstanding amount. Defendant filed a counterclaim for breach of contract,

fraud, and breach of fiduciary duty. On February 21, 2017, defendant served discovery demands upon plaintiff seeking business records. In response, plaintiff advised that the records were kept at the business, and he had no access to them because he had not been there in three years. He did provide a copy of the partnership agreement and 2014 Agreement, and he indicated defendant possessed the records she requested.

Defendant unsuccessfully moved for a directed verdict at the close of plaintiff's case. The jury returned a verdict in favor of plaintiff for $50,000 and found no cause of action as to defendant's counterclaim. The trial judge awarded plaintiff pre-judgment interest in the amount of $3616.36 for a total judgment of $53,616.36.

On appeal, defendant argues the trial judge abused her discretion by permitting plaintiff to introduce evidence he failed to produce in discovery; she erred by allowing plaintiff to testify in narrative form; allowed him to call two witnesses at trial despite not disclosing their identities during discovery; erred by denying defendant's motion for a directed verdict; and that we should exercise original jurisdiction and reverse the order of judgment.

A-3912-17T2

## II.

Defendant first argues the trial court erred by disregarding prior orders that barred plaintiff from introducing evidence that was not provided in response to her interrogatories and notices to produce propounded on February 21, 2017. However, the record indicates that on March 8, 2017, plaintiff sent a letter to defendant's counsel disputing the statements made in her answer and counterclaim, and he responded to her discovery demands by stating defendant was in possession of all the business records she requested.

In contrast, plaintiff submits that the court did not allow him to introduce additional evidence into the record, other than using a single blank form to refresh a former employee, Lisa Harris's, recollection concerning the market's payroll procedures, and utilizing pictures of the store as demonstrative exhibits for the jury. Moreover, plaintiff argues he never propounded discovery and the trial exhibit list illustrates that the only evidence plaintiff was allowed to utilize was the partnership agreement, the 2014 Agreement, photographs of the market showing before and after differences after the expansion, and an income statement for the market. Harris testified as a rebuttal witness for plaintiff, and the blank form was not moved into evidence or given to the jury during their

8

deliberations. Defense counsel declined to cross-examine her, and contended Harris "was a disgruntled employee who was out to get revenge on [defendant]."

Rule 611(a) states that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." N.J.R.E. 611(a).

We apply a deferential standard of review to a trial court's order regarding the presentation of evidence. "[T]he precise parameters of cross-examination are . . . left to the trial court's discretion[.]" State v. Simon Family Enters., 367 N.J. Super. 242, 257 (App. Div. 2004). "A trial judge is responsible for the control and management of the trial and is vested with wide discretion to perform this function." State v. T.E., 342 N.J. Super. 14, 29 (App. Div. 2001). "Exercise of that discretion is ordinarily not interfered with unless there is a clear abuse of discretion which has deprived a party of a fair trial." Persley v. N.J. Transit Bus Operations, 357 N.J. Super. 1, 9 (App. Div. 2003). An appellate court applies an abuse-of-discretion standard of review. Ibid. "We will not interfere with the trial judge's authority to control the scope of cross-examination 'unless clear error and prejudice are shown.'" State v. Messino, 378

N.J. Super. 559, 583 (App. Div. 2005) (quoting State v. Gaikwad, 349 N.J. Super. 62, 87 (App. Div. 2002)).

Further, a party may "seek to present a demonstration or an illustration of some matter material to the case, as where an accident reconstruction expert might use scale model vehicles and other props to illustrate to the jury how the expert believes the accident in question occurred."  Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on Rule 611(a) (2018).  "In general, the trial court enjoys wide latitude in admitting or rejecting such replicas, illustrations and demonstrations and in controlling the manner of presentation and whether or not particular items are merely exhibited in court or actually received in evidence."  Ibid.

We reject defendant's contention that the trial judge abused her discretion, and we conclude her evidentiary rulings were sound.  Contrary to defendant's argument, the record reveals that plaintiff was not allowed to introduce any new evidence at trial.  Defense counsel prevailed on almost every evidential objection he made.  As to Harris, defense counsel declined to cross-examine her for strategic reasons.  She could have been interviewed or deposed prior to trial. The trial judge appropriately permitted Harris to testify as a rebuttal witness to refute defendant's character attacks of plaintiff, especially on the issue of

credibility. Moreover, defendant has failed to show any bias or prejudice resulting from the trial judge's evidential rulings.

### III.

Defendant next argues that the trial judge improvidently allowed plaintiff to testify in narrative form, thereby denying defendant a fair opportunity to raise objections without the jury first hearing plaintiff's testimony.

At a sidebar conference with the trial judge and defendant's counsel, the following exchange took place:

> THE COURT: My suggestion would be, when I have a self-represented . . . litigant and it was to be the question and answer, my suggestion would be that we forego that.[1] However, you have the opportunity to interrupt and object at any point in time, even if - - you know, usually you wait until an answer is finished and basically what we do is, if he says . . . so and so told me, you jump to your feet and you object and don't have to wait until the information comes in.
>
> [COUNSEL]: Okay.
>
> THE COURT: Does that make sense?
>
> [COUNSEL]: But I - -
>
> THE COURT: Okay, sir, --

---

[1] The record reflects defense counsel, Mr. Cho, suggested that plaintiff should ask himself a question and then answer it as opposed to testifying in narrative format.

A-3912-17T2

[COUNSEL]: But I do have another suggestion.

THE COURT: What's that?

[COUNSEL]: Is all the things that he wants to testify about is probably in my cross. If you - - if he's willing to have me just cross him and he can - -

THE COURT: Well, --

[COUNSEL]: I mean, that's up to him. I'm sorry. It could - -

THE COURT: Okay. Well, that's up to him, but I will tell you that I have an issue with that, because cross-examination tends to be leading so it doesn't really - -

[COUNSEL]: That's - - yeah, I do - -

THE COURT: -- give - - it doesn't - -

[COUNSEL]: Yea, most of my questions are leading.

THE COURT: Right. So it doesn't give him - -

[COUNSEL]: And I didn't really (indiscernible) today - -

THE COURT: It doesn't . . . give him the opportunity to present his story. What it does is, it presents you the opportunity to get his story through your lens.

[COUNSEL]: Right.

THE COURT: So . . . I'd say we're not going to go with that.

[COUNSEL]: Okay.

A-3912-17T2

THE COURT: But basically what I am going to do is I will instruct the jury that you may be interrupting and --

[COUNSEL]: <u>Okay</u>.

[(Emphasis added).]

Defense counsel acquiesced in allowing plaintiff to present narrative testimony and failed to object to the trial judge's decision on the record.

<u>Rule</u> 1:7-2 states:

> For the purpose of preserving questions for review or appeal relating to rulings or orders of the court or instructions to the jury, a party, at the time the ruling or order is made or sought, shall make known to the court specifically the action which the party desires the court to take or the party's objection to the action taken and the grounds therefor. Except as otherwise provided by [<u>Rule</u>] 1:7-5 and [<u>Rule</u>] 2:10-2 (plain error), no party may urge as error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its verdict, but opportunity shall be given to make the objection in open court, in the absence of the jury. A party shall only be prejudiced by the absence of an objection if there was an opportunity to object to a ruling, order or charge.

Because defendant's argument was not raised at trial, we review her argument under the plain error rule. <u>See</u> <u>R.</u> 2:10-2. If an error was not brought to the trial court's attention, we will not reverse unless the appellant shows plain

13

error.  State v. Bueso, 225 N.J. 193, 202 (2016).  Plain error must be "clearly capable of producing an unjust result."  Ibid. (quoting R. 2:10-2).  However, we "may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court."  Ibid.

We conclude no plain error was committed here.  Defendant's contention that the narrative testimony "allowed [plaintiff] to improperly influence the jury and prejudice[] [her] because she did not receive the same opportunity to tell her story as [p]laintiff[,]" is belied by the record because her attorney failed to object to the trial judge's decision.  The narrative testimony was not problematic here because defense counsel had the ability to assert a well-founded objection if plaintiff uttered something inappropriate.  See State v. Farrior, 14 N.J. Super. 555, 557-58 (App. Div. 1951).  The ruling was entirely consistent with the provisions of Rule 611(a) and not erroneous.  Furthermore, defendant was represented by counsel and had the opportunity to present her version of events through her direct testimony.

IV.

Defendant next contends that the trial judge erred by denying her directed verdict motion.  In reviewing a trial court's decision on a motion for a directed verdict, pursuant to Rule 4:40-1, we apply the same standard of review as the

14

trial court. Frugis v. Bracigliano, 177 N.J. 250, 269 (2003).  A motion for directed verdict must be denied "[i]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ[.]"  Estate of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000) (quoting Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 415 (1997)).

"Conversely, a 'dismissal is appropriate when no rational jury could conclude from the evidence that an essential element of the plaintiff's case is present.'"  Perez v. Professionally Green, LLC, 215 N.J. 388, 404 (2013) (quoting Pron v. Carlton Pools, Inc., 373 N.J. Super. 103, 111 (App. Div. 2004)); see also Frugis, 177 N.J. at 270 ("[I]f the evidence and uncontradicted testimony is 'so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury.'" (quoting Ferdinand v. Agric. Ins. Co., 22 N.J. 482, 494 (1956))).  However, courts are "not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion."  Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

The thrust of defendant's argument is that reasonable minds cannot disagree plaintiff is not a part owner of the market because the agreements they entered are confusing, and it is unclear whether the corporate entity was formed before or after they entered into their partnership agreement. Her argument is totally devoid of merit.

Defendant's argument essentially concedes that plaintiff met his burden of proof by establishing prima facie material facts were in dispute such as: (1) whether or not he had an ownership interest in the market; (2) whether the corporate entity was formed before or after creation of the partnership agreement; (3) the meaning of the term "equity interest" is undefined; (4) any ownership interest of plaintiff vis-à-vis the 2014 Agreement was unclear; (5) the existence or lack of an oral agreement between the parties was uncertain; and (6) whether or not plaintiff was issued shares for the corporation was unresolved. The trial judge appropriately recognized these factual disputes noting "there is a written agreement for something" and an "agreement to sell and purchase shares" which will require "a very long jury charge." The trial judge rightfully determined she "cannot look at the evidence in this case as narrowly a[s] the defendant would like [her] to and say, well, there's evidence that there is no oral

agreement so I guess the plaintiff doesn't get $50,000." Denial of defendant's motion for a directed verdict was proper.

V.

Finally, for the first time on appeal, defendant argues that we should exercise original jurisdiction and reverse the April 10, 2018 order of judgment. Appeals where the specified issue was never raised below are governed by the plain error rule. R. 2:10-2. If the error was not brought to the trial court's attention, we will not reverse on the ground of such error unless the appellant shows plain error. Plain error must be "clearly capable of producing an unjust result." Ibid. However, "the [court] may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court." Ibid.

Rule 2:10-5 allows the appellate division to "exercise such original jurisdiction as is necessary to the complete determination of any matter on review." Original jurisdiction should be exercised "with great frugality . . . . but not to 'weigh[] any evidence anew' or 'make independent factual findings.'" State v. Micelli, 215 N.J. 284, 293 (2013) (second and third alterations in original) (citations omitted).

Defendant argues there are no issues of fact in the record and therefore, we do not need to make any independent factual findings. We disagree.

A-3912-17T2

The trial judge prudently determined salient facts were in dispute requiring submission to the jury for a determination. To re-evaluate those same facts on appeal would not only violate <u>Rule</u> 2:10-5, but would also completely ignore the well-reasoned findings of the trial judge who is to be given deference.

We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3912-17T2