**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4142-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN J. CANTALUPO, a/k/a
JOHN J. CANTALUPO, JR.,

     Defendant-Appellant.

_____

Argued December 19, 2018 – Decided January 8, 2019

Before Judges Alvarez and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 13-07-1772.

Thomas M. Cannavo argued the cause for appellant (Steven W. Hernandez, attorney; Thomas M. Cannavo, of counsel and on the brief).

William K. Meighan, Senior Assistant Prosecutor, argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel; William K. Meighan, on the brief).

PER CURIAM

Defendant John J. Cantalupo appeals from a March 29, 2017 order after a bench trial in which he was found guilty of possession of a controlled dangerous substance (CDS) in an automobile, N.J.S.A. 39:4-49.1; driving while intoxicated (DWI), N.J.S.A. 39:4-50; reckless driving, N.J.S.A. 39:4-96; failure to wear a seatbelt, N.J.S.A. 39:3-76.2(f); failure to observe traffic signals, N.J.S.A. 39:4-81; and third-degree possession of Phencyclidine (PCP), N.J.S.A. 2C:35-10(a)(1).  As part of his sentence, defendant received three years of probation with 180 days in jail, but the court suspended 150 days of the jail time imposed. We affirm the convictions, but reverse and remand the sentence in accordance with this opinion.

The following facts are taken from the record.  On January 12, 2013, Toms River Police Sergeant Daniel Sysol observed a vehicle operated by defendant moving unusually slow and well below the speed limit, traveling southbound on Vermont Avenue toward the intersection with Cox Cro Road.  Sysol followed the vehicle, which stopped briefly at a red light before making an illegal left-hand turn on red.

When Sysol stopped the vehicle he noted defendant was not wearing his seatbelt.  Defendant was moving slowly, fumbled his credentials, spoke with

slurred speech, and his pupils were unusually constricted. Sysol requested defendant exit the vehicle and observed he was moving slowly and having difficulty standing and walking without falling or swaying from side-to-side. Sysol requested a Drug Recognition Expert ("DRE") assist in the investigation.

Officer Steven Schwartz, a DRE, responded. He also observed defendant's pupils were constricted and noted he had difficulty maintaining his balance. Additionally, he detected a strong chemical odor on defendant's breath. Schwartz requested defendant perform a field sobriety test.

Schwartz had defendant perform a Horizontal Gaze Nystagmus ("HGN") test. Schwartz testified defendant's eyes did not follow his finger smoothly and his body swayed from side-to-side, which were signs of impairment. Schwartz next conducted a walk-and-turn-test, which defendant also struggled to perform. Defendant stumbled several times, had difficulty maintaining his balance, held his arms out horizontally for balance, failed to touch his toe to heel as he took each step, and took more steps than directed. Schwartz also directed defendant to perform a one-leg-stand test, but he was unable to raise his foot off the ground without losing balance.

A-4142-16T2

Defendant was arrested for DWI, read his Miranda[1] warnings, and placed in a police vehicle. Prior to transporting defendant's vehicle from the scene, Schwartz illuminated its interior and observed a small glass vial positioned between the center console and the driver's seat. Schwartz testified the vial looked similar to an eyedropper glass with a black cap, and believed it contained CDS based on its appearance and the chemical odor on defendant's breath. Schwartz observed the contents of the vial were a brown liquid substance with floating vegetative matter. Subsequent laboratory testing on the vial revealed it contained PCP.

At the police station, defendant was read his Miranda warnings a second time, and signed a waiver form. An Alcotest indicated a blood alcohol content of 0.0. As a result, Schwartz performed a full DRE to determine the source of defendant's impairment. He conducted another HGN test, which defendant failed. He also conducted a lack of convergence ("LOC") test where defendant was instructed to follow the officer's fingertip as it was moved toward defendant's nose. Defendant's eyes remained focused straight ahead and did not converge on the officer's fingertip, which was a sign of intoxication.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-4142-16T2

Defendant was also asked to stand with his feet together, close his eyes, tilt his head backward, and estimate the passage of thirty seconds without counting aloud. Although defendant was able to count for twenty-seven seconds, he swayed in a circular motion throughout the test.

Schwartz conducted another one-leg-stand test during which defendant failed to maintain his balance. He also performed a dark room test to observe how defendant's pupils adjusted to light. Defendant's pupil constriction was slow. Defendant's blood pressure was elevated, and his body temperature was below normal during the testing. However, his muscle tone was normal and he showed no signs of injection sites or drug residue in the mouth or nose.

Schwartz interviewed defendant as a part of the DRE. He testified defendant still had a chemical odor on his breath, spoke in slurred speech, and admitted to smoking a cigarette dipped in PCP approximately fifteen minutes before he was stopped. Defendant also admitted he had taken Percocet earlier in the day because he was experiencing shoulder pain. Defendant consented to providing a urine sample, which tested positive for oxycodone and PCP.

We next recite the extensive pre-trial timeline and motion practice, which occurred in this case, because it bears on the issues raised in the appeal. Defendant incurred the motor vehicle charges in January 2013, and was indicted

for the drug possession charge in July 2013. On July 25, 2013, the State offered to recommend probation with 364 days in jail, in return for defendant's entry of a guilty plea with respect to the DWI and CDS charges. Defendant did not enter into a plea and was subsequently arraigned in September 2013.

On June 23, 2014, the State hand-delivered the urinalysis report to defendant. In January 2015, defendant filed a motion to dismiss the indictment and the charges on speedy trial grounds. The motion was denied in February 2015.

On March 18, 2015, the State requested a plea cutoff date and a trial date. Five days later, defendant requested the State agree to a conditional plea, which would have allowed him to plead guilty to the indictable offense while preserving his right to appeal the denial of the speedy trial motion. The State rejected the request.

In April 2015, defendant filed a motion to stay the imposition of the sentence and to set bail in the event of a conviction. In May 2015, defense counsel advised the court defendant would likely plead guilty and requested the motion be adjourned until after the plea.

On May 18, 2015, defendant retained new counsel, who filed a motion to suppress the urinalysis and field sobriety tests the following day. The court

heard extensive testimony on the motion on October 15, October 28, and November 12, 2015, and ultimately denied it on December 1, 2015.

On January 4, 2016, defendant renewed the request for a conditional plea, which the State rejected. On January 29, 2016, he filed a motion to compel the conditional plea over the State's objection, which the court denied on February 22, 2016.

A plea cutoff date was set for March 15, 2016, and a trial date was set for September 13, 2016. A month before trial, defendant moved to sever the motor vehicle offenses from the indictable charge. A day later he filed another motion raising seven arguments, none of which are raised on appeal.

On September 9, 2016, defendant made a third request for a conditional plea, which was rejected. Because a new trial judge was assigned to the case, the trial date was converted into a status conference with that judge, who set trial for October 25, 2016.

On September 15, 2016, defendant requested an adjournment of the trial because his expert was unavailable to testify. On September 20, 2016, he filed a motion for reconsideration of the conditional plea and the speedy trial determinations. The motions were argued on October 11 and October 14, and denied on October 26, 2016.

A-4142-16T2

Defendant filed a motion for leave to appeal from the denial of reconsideration. We denied the motion on December 19, 2016.

Defendant waived his right to a jury trial. The trial commenced in February 2017 and continued into March 2017. The trial judge found defendant guilty on all charges and sentenced defendant in May 2017. This appeal followed.

Defendant raises the following points:

> POINT I – THE LAW DIVISION ERRED IN DENYING THE INITIAL SPEEDY TRIAL DISMISSAL MOTION. THUS, ALL CHARGES SHOULD BE DISMISSED.
>
> POINT II – EVEN IF THE INITIAL SPEEDY TRIAL MOTION WERE CORRECTLY DENIED, THE ADDITIONAL DELAY DUE TO THE STATE'S ARBITRARY REFUSAL TO ALLOW A CONDITIONAL PLEA VIOLATED DEFENDANT'S SIXTH AMENDMENT AND ART. 1, PAR. 10 SPEEDY TRIAL RIGHTS, MANDATING DISMISSAL OF ALL CHARGES WITH PREJUDICE.
>
> POINT III – GIVEN THE LACK OF REASONABLE SUSPICION TO PERFORM PSYCHOPHYSICAL TESTS AT THE SCENE PURSUANT TO STATE V. BERNOKEITS, THE LAW DIVISION ERRED IN FAILING TO SUPPRESS ALL EVIDENCE SEIZED OR OBSERVED AS FRUIT OF THE POISONOUS TREE. THUS, DEFENDANT SHOULD BE ACQUITTED OF ALL CHARGES ARISING AFTER THE MOTOR VEHICLE STOP.

POINT IV – THE LAW DIVISION ERRED IN DENYING THE MOTION TO SUPPRESS THE CDS FOUND IN THE MOTOR VEHICLE UNDER THE DOCTRINE OF PLAIN VIEW. THUS, THE DEFENDANT MUST BE ACQUITTED OF THIRD[-] DEGREE CDS POSSESSION.

POINT V – THE LAW DIVISION ERRED IN DENYING THE MOTION TO SUPPRESS THE URINE TEST RESULTS AS A WARRANTLESS SEARCH INCIDENT TO ARREST.

POINT VI – THE LAW DIVISION ERRED IN DENYING THE MOTION TO SUPPRESS THE WARRANTLESS SEIZURE AND TESTING OF DEFENDANT'S URINE PURSUANT TO EXIGENT CIRCUMSTANCES.

I.

Defendant challenges the trial court's denial of his motions to dismiss. He argues the State violated his right to a speedy trial because nine months elapsed before the State provided the urinalysis.

We owe no special deference to the "trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). However, we will reverse the denial of a motion to dismiss a complaint on the grounds it violates a defendant's constitutional right to a speedy trial only if it is "clearly

9

erroneous." State v. Tsetsekas, 411 N.J. Super. 1, 10 (App. Div. 2009) (citing State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977)).

The Sixth Amendment of the United States Constitution affords a defendant the right to a speedy trial on criminal charges; through the Due Process Clause of the Fourteenth Amendment, that right is applicable in state prosecutions. Klopfer v. North Carolina, 386 U.S. 213, 222-26 (1967); see State v. Szima, 70 N.J. 196, 200-01 (1976). The speedy-trial right protects a defendant's interest in minimizing "pretrial incarceration," the accused's pretrial "anxiety and concern," and delay that impairs the ability to present a defense. Barker v. Wingo, 407 U.S. 514, 532-33 (1972). Alleged violations of the speedy-trial right are assessed by balancing four factors set forth in Barker, which "requires the court to consider: (1) the length of the delay, (2) the reasons for the delay, (3) whether and how defendant asserted his speedy trial right, and (4) the prejudice to defendant caused by the delay." State v. Townsend, 186 N.J. 473, 487 (2006); see also Barker, 407 U.S. at 530-34.

In applying the four-part test, "[n]o single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." Tsetsekas, 411 N.J. Super. at 10 (citing Barker, 407 U.S. at 533). "Rather, the factors are interrelated," and a fact-sensitive analysis is necessary so that each

factor is "considered in light of the relevant circumstances of each particular case." Ibid. The significance of the length of delay will depend upon the factual circumstances of the particular case, including the nature of the proceedings. Barker, 407 U.S. at 530-31. Additionally:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
>
> [Id. at 531.]

Here, defendant's argument is solely related to the length of the delay prong of the Barker test. Defendant does not dispute the material facts of the case, and instead asserts the court misinterpreted the applicable law.

The trial court found as follows:

> In the case at hand, [d]efendant was indicted in July 2013, [nineteen] months ago. The State provided discovery to the defense on July 16, 2013. Arraignment was held September 3, 2013, at which point the defense asserts it informed the State that they were missing urinalysis reports. The State hand-delivered those reports on June 23, 2014. Thus, the reports were

initially requested in September 2013[,] and were provided nine months later, in June 2014.

At oral argument, the prosecutor relied primarily on her brief. She asserted that she received a letter from defense counsel in November 2013[,] requesting additional discovery, and that the next court date was adjourned because the defendant wanted more time to prepare. The prosecutor also noted that a formal discovery request sent by defense counsel in January 2014[,] never mentioned an outstanding urinalysis report.

Although defense counsel argued that he does not base his motion solely upon the delay in obtaining the urinalysis report, his claim does in fact center on that report. Defense counsel obtained other discovery items [he] requested during the time [he] waited for the urinalysis report. In the view of this [c]ourt, nine months is not an excessively long time to wait for the results of a laboratory test, as laboratories can often take several months to issue their reports.

The trial court's fact-sensitive findings were sound and not clearly erroneous. The court determined the delay in the return of the urinalysis results was not excessive by acknowledging the pace at which such results are generally returned can be unpredictable. Defendant cites no legal basis for us to conclude the court erred as a matter of law.

Next, defendant argues his speedy-trial right was violated because the State was obligated to accept his request for a conditional plea. He asserts "the conditional plea procedure is designed to prevent waste of defense, State[,] and

judicial resources on needless trial[,]" and "the delay and expense of forcing a trial with experts is the very harm and harassment of defendants which constitutes prejudice in the speedy trial context."  Defendant claims the court should have "relaxed the conditional plea rule and allowed the procedure over the State's objection and that the State's decision to reject a conditional plea was arbitrary and prejudicial."  He argues the length and reason for delay prongs of the Barker test are satisfied because the delay in excess of one year was attributable to the State, which compelled him to file three requests for a conditional plea.

"Generally, a guilty plea constitutes a waiver of all issues which were or could have been addressed by the trial judge before the guilty plea."  State v. Robinson, 224 N.J. Super. 495, 498 (App. Div. 1988).  The waiver even applies to claims of certain constitutional violations.  State v. Knight, 183 N.J. 449, 470 (2005) (citing State v. Crawley, 149 N.J. 310, 316 (1997)).  However, there are generally only three exceptions to the waiver rule.  Id. at 471; see State v. Wakefield, 190 N.J. 397, 417 n.1 (2007).  Pertinent here, is the exception which permits a defendant to appeal adverse decisions specifically reserved by a conditional guilty plea entered in accordance with Rule 3:9-3(f).  Knight, 183 N.J. at 471.

Rule 3:9-3(f) requires that a defendant satisfy several conditions before a conditional guilty plea can be accepted. "[A] defendant may plead guilty while preserving an issue for appellate review only with the 'approval of the court and the consent of the prosecuting attorney.'" State v. Gonzalez, 254 N.J. Super. 300, 304 (App. Div. 1992) (emphasis added) (quoting R. 3:9-3(f)). This reservation of "the right to appeal from the adverse determination of any specified pretrial motion" must be placed "on the record." R. 3:9-3(f). The Rule imposes no affirmative obligation on the State to accept an offer of a conditional guilty plea and does not permit the court to compel acceptance of such a plea over the State's objection. Ibid.

Here, the trial court addressed the issue and found as follows:

> This court is bound by Rule 3:9-3(f). A conditional plea will only be accepted if the court approves it and the prosecutor trying the case has no objection. It has been made abundantly clear through plea negotiations, briefs, and oral arguments that the State is not willing to accept a conditional plea. The State has explicitly made clear that they wish to proceed to trial or alternatively accept a non-conditional plea. The court is guided by State v. Giddings, in that while the type of motion the [d]efendant seeks to reserve is the purpose of R[ule] 3:9-3(f) the court will not find it so unique as to excuse clear failure to comply with the rule.
>
> This court understands the [d]efendant's request pursuant to R[ule] 1:1-2[,] but determines that R[ule]

3:9-3(f) is explicitly accepted. The [d]efendant does bring forth cases in which this rule was relaxed but the court agrees with the State that these cases are not applicable to the [S]uperior [C]ourt's decisions. Many of the cases cited by the [d]efendant refer to what happened due to the lack of a conditional plea as opposed to enforcing a conditional plea upon the State. As such, the rule remains explicitly accepted that unless both the court and the Prosecutor agree to a conditional plea, a conditional plea cannot be created while the Prosecutor objects.

On reconsideration the court elaborated further and stated

the court is not persuaded that the New Jersey Court Rules grant[] the [c]ourt the authority to compel a conditional plea. In fact, the court acknowledges that any attempt to compel the State into acceptance of a conditional plea would be an improper invasion into the realm of the executive and a breach of the separation of powers doctrine. Accordingly, the [c]ourt finds the defendant's argument is without sufficient legal authority or merit.

Additionally, this court has found no legal authority which would allow defendant to plea open-ended to all his charges and reserve his right to argue his speedy trial motion on appeal. The court acknowledges the ruling in Knight, which provided only three exceptions to the general rule that all of a defendant's constitutional challenges are waived upon the entry of an open-ended guilty plea. The Knight exceptions are: [a]ppeals to the denial of Fourth-amendment based motions, appeals to the denial of admission into a pretrial intervention program, and appeals of issues that are preserved via the conditional plea process. The court acknowledges that no

15

conditional plea has been offered by the State nor can be compelled in this case.

We agree with the court's assessment. The law cited by defendant pertained to instances where we relaxed Rule 3:9-3(f), pursuant to Rule 1:1-2, to permit defendants to raise issues on appeal which would otherwise have been prohibited for failure to enter a conditional plea. We did not relax the requirement that consent from the State and approval from the court were necessary under Rule 3:9-3(f) for a conditional plea. See State v. J.M., 182 N.J. 402, 410 (2005).

Since the State was not required to agree to a conditional plea, and the trial court was not required to accept one over the State's objection, it follows that defendant's speedy-trial rights were not violated. Indeed, as the trial court noted:

> The State's refusal to consent to a conditional plea should not constitute an unreasonable delay of trial requiring dismissal. The court notes that the State has requested trial dates on [four] separate occasions, however each time trial is scheduled the defendant submits another motion. This should not constitute a delay by the State. The court does note that the delay attributable to [the prior judge]'s departure from the bench cannot be held against the defendant because it was not the defendant who caused this delay. The same can be said of the State, in that regard, therefore the delay caused by [the judge]'s departure cannot [b]e held against the State either. The court cannot force the

16

> State into acceptance of a conditional plea, and the court is not persuaded that the State's refusal to grant consent constitutes an unreasonable delay for speedy trial purposes.

For these reasons, the trial court's denial of defendant's request was not an abuse of discretion. Likewise, the court's failure to find a violation of defendant's speedy trial rights was not clearly erroneous.

## II.

We next address defendant's challenge to the trial court's denial of the motion to suppress the evidence seized from the DWI stop and his person. We begin by recognizing that "[o]ur standard of review is whether there is sufficient credible evidence present in the record to uphold the findings of the Law Division." State v. Dispoto, 383 N.J. Super. 205, 217 (App. Div. 2006) (citing State v. Johnson, 42 N.J. 146, 162 (1964)). "We review the trial court's findings of fact on a motion to suppress deferentially, affirming whenever they are supported by sufficient credible evidence in the record." State v. Dunbar, 434 N.J. Super. 522, 526 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)).

"Generally, we afford substantial deference to a trial court's evidentiary rulings." State v. Sessoms, 413 N.J. Super. 338, 342 (App. Div. 2010) (citing State v. Covell, 157 N.J. 554, 564 (1999)). The trial court is "entitled to draw inferences from the evidence and make factual findings based on his 'feel of the

case,' and those findings [are] entitled to deference unless they [are] 'clearly mistaken' or 'so wide of the mark' that the interests of justice require[] appellate intervention." Elders, 192 N.J. at 245; see also State v. Locurto, 157 N.J. 463, 471 (1999) (quoting Johnson, 42 N.J. at 161-62). We "may not substitute [our] own conclusions regarding the evidence, even in a 'close' case." State v. Jefferson, 413 N.J. Super. 344, 349 (App. Div. 2010) (quoting Locurto, 157 N.J. at 471). "'[A]bsent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment,' an evidentiary ruling will stand." Sessoms, 413 N.J. Super. at 342 (alterations in original) (quoting State v. Brown, 170 N.J. 138; 147 (2001)).

## A.

Defendant claims there was insufficient reasonable suspicion of intoxication to justify his removal from the vehicle on the night of the stop. He contends the State failed to meet its burden because it relied on the hearsay testimony of Schwartz rather than Sysol, the officer who made the initial stop, to establish reasonable suspicion.

The Fourth Amendment of the United States Constitution and the New Jersey Constitution guarantee the right of people to be secure against unreasonable searches and seizures, by requiring warrants issued upon probable

cause.  U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.  Warrantless searches "are presumptively unreasonable and invalid unless justified by a recognized exception to the warrant requirement."  State v. Bolte, 115 N.J. 579, 585 (1989).

One such exception is an investigatory stop.  See State v. Patino, 83 N.J. 1, 7 (1980) ("The warrant requirement . . . may be dispensed . . . in only a few narrowly circumscribed exceptions.  The prima facie invalidity of any warrantless search is overcome only if that search falls within one of the specific exceptions created by the United States Supreme Court."); see also Terry v. Ohio, 392 U.S. 1, 27 (1968); United States v. Hensley, 469 U.S. 221, 226 (1985) (finding that police officers may stop a motor vehicle and detain its occupants temporarily while they investigate a criminal offense).  To subject a person to an investigatory stop and detention, however, the police must have reasonable, articulable suspicion of conduct that violates the law.  State v. Bernokeits, 423 N.J. Super. 365, 371-72 (App. Div. 2011).

A police officer may conduct an investigatory stop if, based on the totality of the circumstances, there is reasonable suspicion to believe an individual has just engaged in, or is about to engage in, criminal activity.  State v. Maryland, 167 N.J. 471, 487 (2001) (citing Terry, 392 U.S. at 21).  Our Supreme Court has defined "reasonable suspicion" as "a particularized and objective basis for

suspecting the person stopped of criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Under the totality of the circumstances analysis, weight is given to the officer's experience and knowledge, and the "rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise." State v. Todd, 355 N.J. Super. 132, 137-38 (App. Div. 2002) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)). In the context of a detention to perform a field sobriety test, "our courts have consistently . . . upheld such routine, standardized testing on the basis of a reasonable, articulable suspicion of driver intoxication." Bernokeits, 423 N.J. Super. at 374 (citing State v. Adubato, 420 N.J. Super. 167, 181 (App. Div. 2011)).

Here, at the suppression motion hearing, Schwartz testified regarding the information he received from Sysol during the traffic stop, namely, defendant's erratic driving and conduct after the stop. However, Schwartz testified about his own observations of defendant and justifications for the administration of the field sobriety test, including the chemical odor on defendant's breath, his slow and slurred speech, and his difficulty maintaining balance.

The court provided a detailed explanation of the basis for reasonable suspicion by explaining the totality of the circumstances. It concluded

the State established that . . . Sysol and . . . Schwartz did have an articulable reasonable suspicion that [d]efendant was driving while intoxicated in order to expand the scope of the initial traffic stop and detain [d]efendant for field sobriety testing. Specifically, first [d]efendant was stopped at 12:21 a.m. after making a left hand turn on red. His speech was slurred, his hand and head movements were slow, and his pupils were pinpoint. Even outside the vehicle, the [d]efendant moved slowly and had difficulty standing and walking without falling or swaying from side to side. In addition, the court notes that . . . Schwartz observed a strong "chemical" odor from the [d]efendant's breath and person. Given the totality of circumstances presented, the officer had a reasonable articulable suspicion that [d]efendant was driving while intoxicated and therefore, the [d]efendant's motion should be denied.

The court also explained why there was no hearsay issue:

Defendant's argument that the only information that . . . Schwartz had was hearsay is inaccurate. As previously mentioned, it was . . . Schwartz who had detected the chemical odor coming from the [d]efendant's breath. This observation, coupled with what . . . Sysol . . . told him about the [d]efendant's slurred speech, slow movements, and inability to stand on his own gave . . . Schwartz enough articulable reasonable suspicion to request the [d]efendant to do psychophysical testing.

Notwithstanding, on appeal defendant cites State v. Bacome, 440 N.J. Super. 228, 240 (App. Div. 2015) for the proposition that a "key fact" is not permitted to be adduced entirely from hearsay and asserts the court here relied on hearsay testimony and there was insufficient evidence to find a reasonable

articulable suspicion of defendant's intoxication to support his detention outside the vehicle.  We disagree.

The issue in <u>Bacome</u> was whether police had a "heightened awareness of danger" during a motor vehicle stop that necessitated ordering a passenger out of a car for a seatbelt violation.  440 N.J. Super. at 237-38 (quoting <u>State v. Smith</u>, 134 N.J. 599, 618 (1994)).  There, the State relied on the testimony of an officer that his partner observed the defendant moving forward and reaching under his seat during the stop.  <u>Id.</u> at 232, 239.  On appeal, we reversed the order denying the motion to suppress because the trial court made "no finding regarding whether there was 'some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer securing the scene in a more effective manner.'"  <u>Id.</u> at 240 (quoting <u>Smith</u>, 134 N.J. at 618).  We noted the trial court failed to explain how the driver's movements suggested the passenger posed a danger.  <u>Id.</u> at 241.

Our Supreme Court reversed, holding "the furtive movements inside the car were 'specific and articulable facts' that warranted heightened caution to order the passengers out of the vehicle."  <u>State v. Bacome</u>, 228 N.J. 94, 108 (2017).  The Court cited the hearsay testimony of the officer, stating "[a] key

element in our analysis is [the officer]'s testimony that, after the detectives pulled the [vehicle] over, [his partner] observed [the] defendant reaching forward under his seat. We defer to the motion judge's finding that [the officer]'s testimony was credible." Id. at 107.

Likewise, here, the trial court acknowledged hearsay evidence is admissible during a suppression hearing, but also made specific findings about Schwartz's testimony, which it found credible. Defendant does not dispute the credibility of Schwartz's testimony. The court found defendant's slow movement, slurred speech, lack of coordination, and unusually constricted pupils provided the reasonable suspicion of intoxication and a basis to detain defendant outside the vehicle. These findings are supported by the substantial credible evidence in the record and we decline to disturb them.

B.

Defendant challenges the seizure of the vial from his vehicle under the plain view exception for a warrantless search. He argues Schwartz lacked probable cause to seize the vial because "his expertise was limited with regard to PCP and other non-common drugs[,]" and he testified the vial resembled an eye dropper. Defendant argues, even if there was probable cause to associate

the contents of the vial with contraband, there was no exigency and Schwartz had sufficient time to obtain a search warrant.

"'[P]lain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment." Texas v. Brown, 460 U.S. 730, 738 (1983). "The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." Payton v. New York, 445 U.S. 573, 587 (1980). Our Supreme Court has stated: "We do not believe that a police officer lawfully in the viewing area must close his eyes to suspicious evidence in plain view." State v. Bruzzese, 94 N.J. 210, 237 (1983). Therefore, for the plain view exception to apply:

> First, the police officer must be lawfully in the viewing area.
>
> Second, the officer has to discover the evidence "inadvertently," meaning that he did not know in advance where evidence was located nor intend beforehand to seize it.[2]
>
> Third, it has to be "immediately apparent" to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure.

---

[2] Our Supreme Court has since excised the inadvertence requirement from the plain view doctrine. State v. Gonzales, 227 N.J. 77, 82 (2016). However, the reformulated doctrine is to be applied prospectively and is inapplicable to this case. Ibid.

[Id. at 236 (citations omitted) (citing Coolidge v. New Hampshire, 403 U.S. 443, 465-68, 470 (1971)).]

The "immediately apparent" prong requires an officer have probable cause to associate the item with criminal activity or contraband. Id. at 237. "In determining whether the officer has probable cause to associate the item with criminal activity, the court looks to what the police officer reasonably knew at the time of the seizure." Ibid.

> [P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176 (1949).
>
> [Brown, 460 U.S. at 742.]

Here, the trial court made the following findings regarding the plain view search:

> The [o]fficer was outside of the vehicle when he viewed the contraband. There is no evidence to show that the officer did not come upon this evidence inadvertently. Finally, the [o]fficer stated on direct examination that although he was not sure of exactly the type of contraband, based on his knowledge he did believe it to be contraband. This information is enough to satisfy

25

the standard for the officer to seize the evidence under the plain view exception.

We agree. Schwartz reasonably believed the vial was contraband based on his experience as a DRE. His testimony was credible because it explained the common usage and physical manifestations of PCP. Additionally, he saw the vial after defendant exhibited signs of intoxication and failed field sobriety tests.

We also reject defendant's contention <u>Gonzales</u> requires the plain view exception to be accompanied by justifiable exigency. In <u>Gonzales</u> the Court concluded,

> [p]lain view, in most instances, will not be the sole justification for a seizure of evidence <u>because police must always have a lawful reason to be in the area where the evidence is found</u>. Thus, when necessary, the police will also be required to comply with the warrant requirement <u>or one of the well-delineated exceptions to that requirement</u>.
>
> [227 N.J. at 104 (emphasis added).]

Here, for reasons we have noted, Schwartz had a lawful reason to be standing beside defendant's vehicle. Moreover, the facts here demonstrate the discovery of the vial was incident to a valid stop, inadvertent, and not pretextual as found in <u>Gonzales</u>. <u>Id.</u> at 87.

26

C.

Defendant argues the urine test was an unconstitutional search and seizure. Specifically, he argues the search incident to arrest and exigency exceptions to the warrant requirement are inapplicable when a urine sample is taken.

As we noted, defendant was Mirandized on two separate occasions, once when he was arrested at the scene of the traffic stop, and again at the station house. After defendant voluntarily signed a <u>Miranda</u> waiver, Schwartz requested a urine sample to complete the DRE procedure, to which defendant complied. Therefore, the search was constitutional and we decline to consider the balance of defendant's arguments regarding the urine sample.

III.

Finally, although neither party raised the issue, at oral argument the State agreed the sentence imposed for defendant's conviction for third-degree possession of PCP was illegal, in that it imposed a jail term of 180 days, but then suspended all but 30 days of the term. <u>See</u> <u>State v. Scioscia</u>, 200 N.J. Super. 28, 32, n. 2 (App. Div. 1985); <u>State v. Cullen</u>, 351 N.J. Super. 505, 507-08 (App. Div. 2002). For these reasons, we reverse and remand the sentence for the PCP possession for re-sentencing.

A-4142-16T2

Affirmed as to the conviction and reverse and remanded as to the sentence.

We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION